can be no just ground for criticism of the indictment, as the evidence would conform to that presented to the grand jury.

I have carefully read the evidence relating to these charges, and am of the opinion that no substantial ground exists which would justify the setting aside of the indictments.

The motions to set aside the indictments herein are denied.

Motions denied.

---

## In re SCHOFIELD'S WILL.

(Surrogate's Court, New York County. April 29, 1911.)

1. EVIDENCE (§ 81*)—PRESUMPTIONS—LAWS OF ENGLAND.
   In the absence of statute or rule to the contrary, the law of New York as to the probate of wills executed in duplicate will be presumed to be the same as the law of England, as established prior to the independence of the state.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 102; Dec. Dig. § 81.*]

2. WILLS (§ 207*)—EXECUTION IN DUPLICATE—PROBATE.
   Where a will is executed in duplicate, only one of the duplicates, called the "authentic," need be probated; but the other must be produced in court.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 515; Dec. Dig. § 207.*]

3. WILLS (§ 175*)—EXECUTION IN DUPLICATE—REVOCATION.
   Where a will is executed in duplicate, the revocation of one part is a revocation of both.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 454; Dec. Dig. § 175.*]

4. WILLS (§ 290*)—EXECUTION IN DUPLICATE—REVOCATION—PRESUMPTIONS.
   Testator executed a will in duplicate, taking one of the duplicate parts with him and depositing it in his safe at his place of business, and leaving the other with his attorney. There was uncontroverted evidence that testator, prior to April 25, 1910, took the duplicate in his custody out of his safe and placed it in his pocket. There was no sufficient evidence that it was ever seen again by any one prior to testator's death on the 30th of May following. A fruitless search was then made for it. *Held*, that it would be presumed that he destroyed such duplicate animo revocandi, and hence the probate of the copy in the possession of the attorney would be denied.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 663; Dec. Dig. § 290.*]

Application by Emil Schofield, as executor named in the duplicate wills of George Schofield, deceased, for the probate of the authentic copy of the will. Probate denied.

Hirsh & Rasquin (Emanuel Newman, of counsel), for proponent.
Benjamin F. Feiner, for contestant.
Abraham Lehman, for legatees.

FOWLER, S. This is a very interesting cause, and it has been remarkably well presented by counsel for all the parties in court. Emil Schofield, the executor named in the duplicate wills of George Scho-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

field, deceased, presented one of such papers for probate in the ordinary course. The duplicate was not produced, and in the petition to probate no mention is made of the fact that Mr. Schofield's will was executed in duplicate. The widow of George Schofield contests the probate of the "authentic," or the example produced in court, and before the hearing began the executor declined to enter into any contest in support of the will, fearing that, if unsuccessful, he might be charged with the costs. See Matter of Leask, 197 N. Y. 193, 90 N. E. 652, 27 L. R. A. (N. S.) 1158, 134 Am. St. Rep. 866.

It is obvious that the family of George Schofield, his widow and their only child, do not favor a decree of probate, and that the real parties before the court interested in maintaining this proceeding to probate are three nieces of George Schofield, who by his will were given trifling legacies, amounting to $750 in the aggregate. It was the brother of these legatees who was the draftsman and attesting witness of the duplicates under consideration, and who gave evidence in support of the probate. It appears of record that letters of administration on the estate of George Schofield were issued to his widow, pursuant to a decree of this court entered June 9, 1910.

That one of the duplicates, the "authentic," was duly executed under the statute of wills, was established on the hearing, and is not controverted. The other example in duplicate was not produced in court. The opposition to probate is based on an allegation of revocation, and this allegation is the decisive issue in this proceeding.

That George Schofield executed his will in duplicate parts is conceded, and was sought to be established on the hearing, although one of such parts is missing and could not be produced, as above stated. No allegation appears of record, in the petition for probate, claiming, in effect, that the missing duplicate had been lost or destroyed since the death of George Schofield. The petition for probate is in the ordinary form, and is silent on the subject of the example not produced in court. The facts in relation thereto are, however, alleged in the contestant's answer and objections, and were amply proved on the hearing.

The attorney who drew the will of George Schofield was an attesting witness, and he gave testimony of Mr. Schofield's instructions to draw duplicate wills, in order to insure greater safety against destruction or loss. This witness was interrogated without objection concerning the contents of the missing duplicate, and he stated that it was an exact duplicate or fac simile of the paper propounded. Whether he should have been so interrogated concerning the contents of a paper not produced, and not sought to be established as a lost will, seemed to the surrogate doubtful (Wilson v. O'Leary, 7 Ch. 448; Matter of Cunnion, 201 N. Y. 123, 94 N. E. 648; Bethany M. E. Church v. Brooks, 128 N. Y. Supp. 250), and the surrogate ventured to so intimate to counsel on the hearing, leaving it to them to take such course thereafter as they deemed advisable.

The testimony disclosed that after execution one of the duplicate examples of Mr. Schofield's will was left in the possession of the counsel who drafted it. This was the authentic, produced on the trial. The other example, or duplicate, was in the possession of the testator him-

self, and in his lifetime was kept in his safe at his place of business in the city of New York. It is in evidence, and I think is not controverted, that Mr. Schofield, the testator, some time before April 25, 1910, took the duplicate example, then in his custody, out of his safe and placed it in his pocket. There is no sufficient evidence that such duplicate example was ever seen again by any one. The testator died on the following 30th of May, 1910. A fruitless search was then made for the duplicate not produced, but it was not found. It had disappeared.

The attempt to break the effect of such disappearance by proving access to the testator's safe by some one interested in the destruction of the duplicate was so inconclusive as to lead to no positive results, and this part of proponent's case must be ignored in the conclusion. There is proof that the testator's estate had greatly lessened in value between the time of the execution of the duplicates and the date of his death. Such change in testator's circumstances may or may not have bearing on the issue of revocation. It is, however, to be mentioned as established on the hearing.

[1] Such being the facts proved in this case, we proceed to the consideration of the law applicable under the peculiar circumstances mentioned. Neither the Revised Statutes nor the decedent estate law (Consol. Laws 1909, c. 13) contain any mention of wills to be executed in duplicate. Wills executed in duplicate parts have, however, been before the courts of this state, and are freely recognized in practice. When statutes do not control, courts are compelled, in matters arising on wills and testaments, to have recourse to the fundamental law established by organic acts of government. This, in the last resort, is always the law of the superseded and subordinate government of New York. The law of that subordinate government is presumed, in the absence of proof to the contrary, to coincide with the law of England, as established prior to the independence of New York.

It is never denied that the law of England, recognized in respect of duplicate wills, was translated to New York by competent authority, and finally incorporated in its present jurisprudence by fundamental or organic acts of government too familiar and numerous to require detailed mention. Vanderheyden v. Reid, 1 Hopk. Ch. 408; Goodrich v. Pendleton, 4 Johns. Ch. 549, 552; Betts v. Jackson, 6 Wend. 173, 185; Robins v. Coryell, 27 Barb. 556. The law of England (as is the case with our own) in reference to wills executed in duplicate was also largely derivative, and is controlled by the principles of the canon, or, in the last resort, of the civil law. It was this law which in England was generally applied in testamentary causes, and for this reason the practitioners in the ecclesiastical courts having jurisdiction of such causes were required to be doctors of the civil law, even after the English Reformation and until recent times. Swinburne, pt. VII; 3 Holdsworth Hist. Eng. Law, 423. Thus it is that the Institutes of Justinian, in the final analysis, furnish the general reason for duplicate testaments. stating in substance that they may be sometimes necessary for numberless reasons, as, for instance, when a man goes a voyage, and desires to take a memorial of his last wishes with him and to leave one at home. Each duplicate must, however, have been made with the

prescribed forms. J. 2, 10, 13. But one only of the duplicates was recognized as "authentic."

[2, 3] Wills executed in duplicate were very familiar to the civilians, and they are frequently mentioned authoritatively in the Pandects, where it is apparent, also, that the production of both examples might be required. D. 28, 1, 24; D. 37, 11, 1, 5. In the mode roughly outlined it became the rule, and has always been the rule, of the probate jurisdictions in this state, or recognized in this state, that only one of the duplicates (called the authentic) need be probated, but that the other must be produced in court, as a revocation of one part is a revocation of both. Killican v. Lord Parker, 1 Lee, 662; Boughey v. Sir William Moreton, 2 Lee, 532; Crossman v. Crossman, 95 N. Y. 145, 150; Roche v. Nason, 185 N. Y. 128, 135, 77 N. E. 1007.

With this brief explanation of what is conceived to be the rise and origin of the present law regulating wills executed in duplicate, we come to the consideration of the real question in the cause before us: Is George Schofield's will, executed in duplicate, revoked, so as to authorize a denial of probate to the "authentic," or, in other words, to the example produced and filed in court?

[4] In other probate jurisdictions some nice questions of revocation of wills executed in duplicate have arisen, where the testator, having possession of both examples, destroys one, but not the other. Jarman on Wills (6th. Ed.) 151; Managle v. Parker, 75 N. H. 139, 71 Atl. 637, 24 L. R. A. (N. S.) 180. In Bonis Hains, 5 N. of C. 621; Pemberton v. Pemberton, 13 Ves. 310. Pemberton v. Pemberton seems to be a leading case on that point, and the will was there finally held, against the obvious opinion of the Lord Chancellor, not to have been revoked. The presumption of revocation in such a case is, of course, a weak one; for the testator, when possessed of both examples, is at liberty to destroy them, and yet he does not do so. But as this state of facts does not exist in this cause, the authorities bearing on such a state of facts need not be considered, except to remark that the surrogate has found no adjudication bearing on this precise point in this state. In the present cause it is established that Mr. George Schofield, the testator, did not have possession of both examples or duplicates. The authentic, or the example actually produced for probate, was not in his custody in his lifetime, and no presumption, it is thought, is to be drawn from the passive conduct of the testator in respect of that example. He may have been of the opinion that its destruction was not necessary to a revocation, or, as his nieces were named in the duplicate as legatees, he may not have desired them to know of the revocation. What his thoughts were we do not know, and cannot consequently consider.

That the revocation of the example in the testator's custody works a revocation of a duplicate will as a whole is the established law of England. Burtonshaw v. Gilbert, Cowp. 49; Boughey v. Moreton, 3 Hagg. 191, note; Jones v. Harding, 58 L. T. 60; Paige v. Brooks, 75 L. T. 455; Colvin v. Fraser, 2 Hagg. 266. The law of this state is precisely the same on this point, judging from the expressions of our courts of last resort. In Betts v. Jackson, 6 Wend., at page 185, Chancellor Walworth gives the stamp of his distinguished approval

to the decision in Colvin v. Fraser, and refers to that decision at length. In Crossman v. Crossman, 95 N. Y., at page 150, the Court of Appeals distinctly say of duplicate wills that a revocation of one part is a revocation of both; and Crossman v. Crossman is cited as an authority in the late decision rendered in Roche v. Nason, 185 N. Y. 128, 135, 77 N. E. 1007.

Such an expression of a final tribunal in this state is, of course, binding on a court of first instance. It was evidently followed by Surrogate Rollins in Asinari v. Bangs, 3 Dem. Sur. 385, although in that cause the example in testatrix's own custody was proved to have been torn to pieces by testatrix herself. Here the facts are not the same. In this cause there is no proof that the testator actually destroyed the example in his custody; but it was not found at his death, nor was it produced at the hearing in this proceeding. It has disappeared. There can be no doubt that to such a state of facts we must apply the established presumption "that a will proved to have had existence and not found at the death of testator was destroyed animo revocandi." Knapp v. Knapp, 10 N. Y. 276, 278; In re Cunnion, 201 N. Y. 123, 94 N. E. 648; In re Wear's Will, 131 App. Div. 875, 116 N. Y. Supp. 304.

I accordingly hold that George Schofield's will was revoked by him in his lifetime, and that probate of the paper or example produced in court must therefore be denied. Let a decision and decree in conformity with this opinion be presented to me for my signature. There will be no provision for costs inserted in such decree, except for the guardian of the infant respondents.