**In re SMITH'S ESTATE.**
No. 68649.

District Court of the United States for the District of Columbia.

May 7, 1948.

F. Granville Munson and Jerome F. Barnard, both of Washington, D. C., for petitioners.

HOLTZOFF, Associate Justice.

Ella Van Horn Smith died on December 17, 1946, leaving a last will and testament executed on November 11, 1937. This will was probated by this Court on March 15, 1947. Subsequently, another testamentary instrument, dated April 28, 1944, was found among the papers of the deceased and presented for probate. There is now before the Court a petition praying for the revocation of the decree probating the will of November 11, 1937, and for a decree probating the will of April 28, 1944.

The later document purports to revoke all former wills and to make a complete

testamentary disposition of all of the decedent's property. This will, however, contains a number of cross-marks made with a lead pencil across the text. The entire first page is defaced by such a mark. This is also true of one paragraph and of a large part of the second page, as well as most of the third page. In addition, individual words are stricken through with a line in several places. The attestation clause is defaced with three pencil lines crossing each other, and the signatures of the attesting witnesses are torn. The question presented is whether the second will may be probated, or whether it must be deemed to have been revoked by the testatrix.

Revocation of wills is governed by the District of Columbia Code, 1901, Section 1626, D.C.Code 1940, Title 19, Section 103. The pertinent provisions of this Section are as follows: " * * * no devise or bequest, or any clause thereof, shall be revocable otherwise than by some other will or codicil in writing or other writing declaring the same, or by burning, *canceling,* tearing, or obliterating the same by the testator himself or in his presence and by his direction and consent; but all devises and bequests shall remain and continue in force until the same be burned, canceled, torn, or obliterated by the testator or by his direction in the manner aforesaid, or unless the same be altered or revoked by some other will, testament, or codicil in writing, or other writing of the testator signed in the presence of at least two witnesses attesting the same, any former law or usage to the contrary notwithstanding."

■ The pertinent term of this statute is the word "canceling". It is necessary to determine what constitutes a cancellation. Since similar statutory provisions are found in many States, cases from other jurisdictions are persuasive, as there appear to be no decisions in the District of Columbia on this point.

■ It is well established that two factors must be present in order to revoke a will: first, there must be an act of revocation; and second, the act of revocation must have been performed with an intent to revoke, Dammann v. Dammann, Md., 28 A. 408 (not officially reported); In re

Estate of Olmsted, 122 Cal. 224, 54 P. 745; In re Estate of Kemper, 157 Kan. 727, 735, 145 P.2d 103; Frothingham's Case, 76 N.J.Eq. 331, 74 A. 471. If, however, the will on its face contains marks amounting to cancellation, there is a presumption that they were placed on the document with intent to revoke it, Dammann v. Dammann, supra; In re Estate of Kemper, supra, 157 Kan. 727, at page 733, 145 P.2d 103; In re Estate of Olmsted, supra; McIntyre v. McIntyre, 120 Ga. 67, 70, 47 S.E. 501, 102 Am.St.Rep. 71, 1 Ann.Cas. 606. There is no evidence in this case tending to controvert this inference. Consequently, the ultimate query is whether the marks found on this will amount to a cancellation within the meaning of the statute.

■ Cross-marks drawn through principal clauses of a will, or crisscross lines drawn across the face of the document, constitute cancellation, Dammann v. Dammann, supra; Worcester Bank & Trust Co. v. Ellis, 292 Mass. 88, 197 N.E. 637; In re Estate of Olmsted, supra; In re Estate of Kemper, supra; McIntyre v. McIntyre, supra; and Frothingham's Case, supra. There is no distinction between marks made with ink and marks made by lead pencil. Both are equally effective, Worcester Bank & Trust Co. v. Ellis, supra; Frothingham's Case, supra.

An illuminating discussion of this matter is found in Warner v. Warner's Estate, 37 Vt. 356, 362, 363: "From the fact that cross marks were so easily made, and, when made upon the face of a written instrument, were so significant that, thereby, the maker of them designed to put an end to the continuing validity of the instrument, this mode was recognized and adopted into the statute, in common with tearing, burning and obliterating, as one by which wills might be revoked. In some instances this mode might be preferable to either of the others, as when it should be desirable to preserve the legibility of the entire instrument, which might not happen as the result of burning, tearing or obliterating. While, therefore, a common and customary mode of manifesting the intent to abrogate the instrument, by drawing cross lines over the face of it, gave rise to the use of the term *cancel,* still the entire

judicial history of the subject shows that *that manner* of marking an instrument is by no means essential in order to answer to the full force and effect of the term in its *legal* sense. The net result of all the cases and all the textbooks, as well as the reason of the thing, and the appropriate analogies, seems to be this,—that, when the instrument is so marked by the maker of it, as to show clearly, whenever it is produced, that the act was designed by him to be a *cancelling,* that act becomes effectual, by force of the statute, as a revocation of the will by cancelling." (Emphasis original.)

■ The conclusion is inescapable that the markings contained on the face of the will of 1944, are sufficient to constitute a cancellation within the meaning of the statute.

■ The proponents of the later will, however, rely on the doctrine of "dependent relative revocation". This term is perhaps somewhat ambiguous. What it really means is a provisional or conditional revocation. If the revocation of a will is so closely or intimately connected with the making of another will, as to warrant the inference that the testator intended that the revocation of the old should depend upon the efficacy of the new disposition which he intended to substitute, the revocation fails and the original will remains in force if the will intended to be substituted is inoperative. Ordinarily, this doctrine comes into play when a later will is actually executed but is ineffective or inoperative from some defect in its execution. It is not sufficient that there be merely an intention to make a new will, Dammann v. Dammann, supra. Moreover, if there is clear intention to revoke the former will, the doctrine of dependent relative revocation is not applicable. In this case no substituted will has been executed, or even prepared or drafted, insofar as the record shows. There is not even any clear and convincing showing that the testator had determined what specific disposition to make of his property, upon the revocation of the will of 1944.

■ It necessarily follows that the doctrine of dependent relative revocation is not germane to the situation here present-ed and the will executed on April 28, 1944 must be deemed to have been revoked.

The second will having been duly executed necessarily revokes the earlier will of 1937. The revocation of the second will does not reinstate the earlier will. Consequently, the petition will be granted insofar as it prays for setting aside the probate of the 1937 will, but will be denied insofar as it prays for probate of the 1944 will.