361 A.2d 166 (1976)
ESTATE of Anne M. McKEEVER.
Martin W. CHRISTOPHER, Appellant,
v.
Doris KRAUS et al., Appellees.
No. 9571.
District of Columbia Court of Appeals.
Argued January 8, 1976.
Decided July 23, 1976.
*168 Martin J. McNamara, Washington, D. C., with whom Glenn D. Simpson, Rockville, Md., was on the brief, for appellant.
Michael L. Glaser, Washington, D. C., with whom Francis E. Fletcher, Jr., Washington, D. C., was on the brief, for appellee.
Before GALLAGHER, NEBEKER and MACK, Associate Judges.
MACK, Associate Judge:
This case comes to us on appeal from the Superior Court's grant of summary judgment for the appellee, the duly-appointed administratrix of a decedent's estate, on appellant's complaint (initially filed in the United States District Court for the District of Columbia[1]), requesting revocation of letters of administration and admission to probate of a purported testamentary document. The Superior Court found that there was no genuine issue of fact in dispute, that the document sought to be probated was invalid as a will, and that the decedent died intestate. We affirm.
The stage for this protracted litigation was set on November 7, 1970, when Anne M. McKeever, a resident of the District of Columbia, died in a local hospital to which she had been admitted two days previously. She left no surviving relatives within the fifth degree of kindred, and the hospital in accord with her instructions in case of emergency, notified her friend, the appellee Kraus. Appellee arranged for the decedent's funeral and interment and sought legal advice which led to the supervised entry on November 17, 1970, of the Cathedral Avenue apartment where decedent had lived alone.
Found in decedent's apartment, which had not been entered subsequent to her admission to the hospital, were several documents of a testamentary nature, including the one which is the focal point of this dispute: *169 a typed ribbon original of a June 16, 1959, "will" from which the signature had been carefully torn and on which interlineations had been made.[2] A few days after this original document was found, an unmutilated copy of the same document, fully executed at the same time and place by the same signatories as the original, was found in decedent's safe deposit box.
On April 19, 1973, the United States District Court granted letters of administration to appellee. The letters were granted over the strong opposition of appellant[3] whose petition for letters of administration cum testamento annexto, on behalf of beneficiaries (all charities) named in the testamentary document, was denied.[4] The court ruled that decedent died under circumstances indicating prima facie intestacy and that appellee was qualified to administer the decedent's estate as a "person interested" under D.C.Code 1973, § 20-331.[5] Appellant sought, then successfully moved to dismiss, an appeal from this April 1973 ruling and thereafter filed the complaint for removal and probate which is the subject of this appeal.
In this court appellant argues, inter alia, that there were general issues of fact that precluded the trial court's granting of summary judgment. He suggests that there are unanswered factual questions with regard to the mutilation of the ribbon original of the 1959 will, argues that its mutilation did not as a matter of law revoke the carbon copy, and presents the doctrine of dependent relative revocation as applying to save the will. His contentions are without merit.[6]

*170 I.
Appellant's recitation of existing unresolved factual issues flies in the face of established principles. Summary judgment is properly granted where there are no genuine trial issues presented by the motion, its supporting and opposing affidavits (which are to set forth such facts as would be admissible in evidence), and the record. See Rommel v. West American Insurance Co., D.C.Mun.App., 158 A.2d 683 (1960). General allegations without specification, or mere conclusions, are not sufficient to raise issues. A party in seeking or defending against summary judgment may not merely rely on his pleadings to establish issues of material fact. Dewey v. Clark, 86 U.S.App.D.C. 137, 180 F.2d 766 (1950). In the instant case, the trial court noted that even though the case had been in the process of litigation for almost four years, appellant had proffered no witnesses to testify, nor did he produce affidavits or any other substantive evidence to support the allegations in his complaint. In contrast, appellee, along with her motion for summary judgment and supporting documents, also submitted seven evidentiary affidavits.
As the trial court further noted, the question before it was whether there was in dispute any genuine issue of material fact as to whether decedent died testate or intestate for estate administration purposes. After careful analysis of the record before it, the court properly concluded that there was no such question.
This record shows that decedent, an extremely security conscious and retiring individual who lived alone, kept the 1959 document in her locked apartment where it was found after her death, subsequent to a carefully supervised search, with her signature removed. When a will is traced into the possession and custody of the testator and is there found mutilated in one of the statutory[7] modes, it will be presumed that the testator destroyed or mutilated it animo revocandi. Webb v. Lohnes, 69 App.D.C. 318, 101 F.2d 242 (1938), cert. denied, 306 U.S. 637, 59 S.Ct. 489, 83 L.Ed. 1038 (1939); In re Smith's Estate, 77 F. Supp. 217, 218 (D.D.C.1948). This presumption was not rebutted, but rather buttressed by the pleadings. According to uncontroverted affidavits, the decedent, shortly prior to death, had orally indicated to several persons that she was revoking her "old will" and had asked for and received new will forms which were found in her apartment.[8] The trial court properly concluded that the 1959 will was revoked by the decedent with the requisite intent.
The existence of the carbon copy in decedent's safety deposit box does not operate in derogation of this ruling. The carbon's preservation (if it could be called that) would not and could not in the circumstances of this case overcome the presumption with regard to the original. See *171 New York State Library School Association, Inc. v. Atwater, 227 Md. 155, 175 A. 2d 592 (1961).[9] Moreover, we are not persuaded by appellant's argument that the carbon copy, by virtue of handwritten notations and changes (some of which in minor respects differ from those on the original) has an efficacy separate and apart from the original. The carbon remains nothing more than a duplicatea part of a set, drawn and executed at the same time and place and attested to by the same witnesses.
The precise question of whether the revocation of one will in a duplicate set of wills is in fact a revocation of all the wills in the set is a case of first impression in our jurisdiction. In such cases where our courts have not been previously confronted with a particular question of law regarding wills, we may look to jurisdictions with similar statutes for guidance. In re Smith's Estate, supra. Illinois, when confronted with the issue in In re Holmberg's Estate, 400 Ill. 366, 81 N.E.2d 188 (1948), chose to adopt the general law that revocation by the testator of one will in a set also operates to revoke all the others in the set. We adopt this generally accepted view as our own. We hold that the decedent's revocation of the original will in her possession also revoked the carbon copy of the same will in her safe deposit box.[10]

II.
Also found in the decedent's apartment were an original and three unexecuted and undated carbon copies of a document which was similar to the one in question except that it left out the interlined and superimposed portions of the original. Appellant argues that another genuine issue of fact existed as to whether the doctrine of dependent relative revocation should apply to bring life to the invalid June 16, 1959, document.
The doctrine of dependent relative revocation comes into play where a later will revoking its predecessor is actually executed but is ineffective or inoperative because of some defect in execution. The old will which was revoked in contemplation of the new will is then brought back to life by operation of the doctrine. The doctrine does not operate where it is clear as here that there was an intent to revoke the prior will. A mere intent to make a new will is insufficient. In re Smith's Estate, supra. We have no way of knowing, and we need not concern ourselves with, whether the unexecuted and undated wills ante-or-post-dated the June 1959 will. The fact is there was no new will which had been executed with a defect which would trigger the doctrine of dependent relative revocation.
In light of the foregoing, we conclude that the decedent died intestate and that summary judgment was properly granted by the trial court. Accordingly, the judgment of the trial court is
Affirmed.
NOTES
[1] The complaint filed in the federal court on June 25, 1973, was styled a "Complaint to Remove Administratrix and to Probate Will" and cited jurisdiction subject to D.C.Code 1973, § 18-501 et seq., Rule 42 of the then Rules of the United States District Court, and 28 U.S.C. § 2072 (1970).

Subsequent to the filing of this complaint, jurisdiction over probate matters in the District of Columbia was transferred to the Superior Court of the District of Columbia.
[2] In addition to the 1959 document, the following items were found in a tin box of a desk drawer in the apartment:

(1) One executed original and two executed carbons of a "will" dated September 17, 1943, with charitable bequests.
(2) One executed Codicil to the 1943 document, dated May 19, 1954, with charitable bequests.
(3) Three unexecuted and undated carbon copies of a "will", the contents of which closely paralleled the "will" of June 16, 1959, in that it omitted the portions of one or both copies of the latter which had been interlineated or written over.
Also found in the apartment, lying on a living room sofa, were blank will forms and a writing pad.
[3] Appellant was Archdiocesan Director of the Society for the Propagation of the Faith of Washington, D.C., acting on behalf of that Society and The Christophers, The Salvation Army, The Little Sisters of the Poor, Sister-Servants of the Holy Spirit of Perpetual Adoration, Fathers of St. Edmund, Southern Missions Inc. Jesuit Seminary and Mission Bureau a/k/a Mission in the Mountain, and Convent of the Religious of the Eucharist.
[4] The District of Columbia entered an appearance in the District Court voicing no objection to the appointment of appellee as administratrix, stating its belief that the decedent left no valid will, and moving to dismiss appellant's petition for Letters of Administration. The District of Columbia has not participated actively in the appeal before this court.
[5] Section 20-331 provides:

On the death of a person leaving real or personal estate in the District of Columbia, the Probate Court may grant letters of administration on his estate, on the application of a person interested, and on proof satisfactory to the court that the decedent died intestate.
Section 20-334 sets out in order of preference the persons entitled to administer, beginning with a surviving spouse or child and ending with a creditor and the proviso that "[w]hen creditors neglect to apply, the court may exercise its discretion in granting administration."
[6] Appellant also vigorously argues that appellee does not have a sufficient interest in decedent's estate to enable her to oppose the probate of the purported will. However, we agree with appellee that the issue of standing, not having been asserted in appellant's complaint or properly raised in the Superior Court, is not before us. Moreover, we note that the issue was exhaustively explored before the United States District Court. In any event, we view appellee, a duly qualified and appointed administratrix representing decedent's posture of intestacy, as having the requisite interest to oppose the probate of a will that she does not believe to be genuine. See McLain v. American Security and Trust Co., 129 U.S.App.D.C. 213, 392 F.2d 818 (1938); Webb v. Lohnes, 68 App.D.C. 310, 96 F.2d 582 (1938), cert. denied, 306 U.S. 637, 59 S.Ct. 489, 83 L.Ed. 1038 (1939). We do not view the cases cited by appellant as holding the contrary. See, e. g., Kimberland v. Kimberland, 92 U.S.App.D.C. 145, 204 F. 2d 38 (1953).
[7] D.C.Code 1973, § 18-109 provides in pertinent part:

(a) A will or codicil, or a part thereof, may not be revoked, except by implication of law, otherwise than by
(1) a later will, codicil, or other writing declaring the revocation, executed as provided by section 18-103 or 18-107; or
(2) burning, tearing, cancelling or obliterating the will or codicil, or the part thereof, with the intention of revoking it, by the testator himself, or by a person in his presence and by his express direction and consent.
Section 18-103 provides that an unsigned will is void.
[8] There is no question that affiants' narrations as to the decedent's statements were admissible to show her intent in mutilating the document. See Savoy v. Savoy, 94 U.S.App. D.C. 411, 220 F.2d 364 (1954).
[9] Since our law of wills is derived from Maryland law, we look to that jurisdiction for aid in construing our statutes. Pascucci v. Alsop, 79 U.S.App.D.C. 354, 147 F.2d 880, cert. denied, 325 U.S. 868, 65 S.Ct. 1406, 89 L.Ed. 1987 (1945).
[10] In re Lawrence's Will, 138 N.J.Eq. 134, 47 A.2d 322 (1946); In re Schofield's Will, 72 Misc. 281, 129 N.Y.S. 190 (1911); In re Wall's Will, 223 N.C. 591, 27 S.E.2d 728 (1943); In re Estate of Bates, 286 Pa. 583, 134 A. 513 (1926).