## In re ESTATE OF William A. BURLESON.

### Pamela Marie Stansel Merritt, Appellant.

### No. 97–PR–1116.

District of Columbia Court of Appeals.

Argued Nov. 10, 1998.

Decided Sept. 9, 1999.

Michael F. Curtin, with whom Mark S. Carlin, and Laurence E. Salans, Washington, DC, were on the brief, for appellant.

Phillip M. Seligman, Attorney, United States Department of Justice, with whom Frank W. Hunger, Assistant Attorney General, Mary Lou Leary, United States Attorney at the time the brief was filed, Mark E. Nagle, Assistant United States

Attorney, J. Christopher Kohn and Robert M. Hollis, Attorneys, United States Department of Justice, and Ildiko P. DeAngelis, Counsel, Smithsonian Institution, were on the brief, for appellee.

Before TERRY and RUIZ, Associate Judges, and MACK, Senior Judge.

RUIZ, Associate Judge:

This appeal arises from the Superior Court's grant of summary judgment for the appellee, the United States, on behalf of its trust instrumentality, the Smithsonian Institution, denying the petition to admit a 1993 will to probate filed by the appellant, Pamela Marie Stansel Merritt. The Superior Court determined that there was no genuine issue of material fact in dispute because all prior wills of the decedent had been revoked by a later 1994 will, without any subsequent acts to revive the prior wills, thereby leaving appellant without standing to assert any claims to the decedent's estate under the earlier will. Appellant's main contention on appeal is that the 1994 will never became effective, and consequently could not have revoked the 1993 will, because the later will was destroyed by the testator prior to his death with the intention of revoking it. We disagree because, even assuming revocation of the 1994 will, its execution sufficed to revoke the 1993 will, which was not subsequently revived as required by law.

## I.

William A. Burleson died in a car accident on November 19, 1995, leaving an estate valued at over $2 million, including various real estate properties. Over the course of his life, Burleson executed four different wills; however, the wills that form the basis of this appeal are the latter two, one executed in 1993, naming appellant and her sons as sole beneficiaries in equal shares, and a subsequent 1994 will in which Burleson revoked all prior wills and left his entire estate to the Smithsonian.[1]

Burleson first contacted Peter Powers, then general counsel for the Smithsonian, sometime in the first half of 1994 and told him that he was interested in leaving a bequest to the Smithsonian. Powers put Burleson in touch with Daniel Linguiti, Director for Planned Giving at the Smithsonian. Burleson and Linguiti spoke directly only once in June 1994 about Burleson's general intention to leave a bequest to the Smithsonian, and they left the details for the implementation of the bequest for a later date.

On June 30, 1994, Natalie Boehm, an employee of William Burleson, called Linguiti from Burleson's home in Deale, Maryland, and told Linguiti that Burleson was about to go into the hospital for surgery and that Burleson wished to draft a will leaving his property to the Smithsonian. Boehm relayed Burleson's request to Linguiti asking him to draft some language that could be used in the will for the bequest. However, before Linguiti could send his drafted language to Burleson, he received a fax from Boehm containing the 1994 will.

Boehm stated in her deposition that she prepared the will according to Burleson's directions on July 1, 1994. On that same day Burleson declared the will to be his and signed it in the presence of Boehm and Idabel Wills. Just above his signature, Burleson added in his handwriting, "All prior wills are revoked." Boehm and Wills signed as witnesses to Burleson's execution of the will. Boehm then faxed the will to Linguiti in accordance with Burleson's wishes. According to Boehm,

1. Appellant was the daughter of Mary Stansel, Burleson's long-time companion. Under the terms of Burleson's first will, executed in 1973, Mary Stansel was to have been the executor and primary beneficiary. After Mary Stansel passed away in early December 1992, Burleson executed a second will at the end of 1992 under which Mary Stansel's daughters, Paula, Angela and appellant, were named as co-executors and sole beneficiaries, in equal shares.

Burleson kept the original 1994 will at his home in a file that he kept by his chair, and told her that he would mail the original to the Smithsonian later. Appellant was not told about the existence of the 1994 will.

Linguiti testified that he visited Burleson at his home in August 1994 to further discuss his estate plans. As a result of that meeting, Linguiti arranged for some curators from the Smithsonian to go to Burleson's office in Washington, D.C., in August and September 1994 to look over some items in which the Smithsonian might be particularly interested. Linguiti and Burleson continued to communicate about Burleson's estate plans,[2] meeting again at Burleson's home on November 4, 1994. At this meeting, Burleson gave Linguiti the original 1994 will and the originals of various documents related to his real estate properties for Linguiti to copy before returning them to Burleson.

Linguiti copied and kept both the 1994 will and the real estate documents at his office until Burleson asked for their return in early February 1995. Linguiti sent the will and some of the real estate documents back to Burleson's office by courier on February 9, 1995. However, because Burleson was not at the office, the courier called the Smithsonian to ask if someone else in the office could sign for it. Linguiti later called Burleson's office to confirm that the package had been delivered and was told that "Pam" had signed for it. Appellant, who was Burleson's office manager at the time, does not remember receiving, or signing for, a package from the

Smithsonian. The original 1994 will has not been seen since Linguiti sent it to Burleson by courier.

Over one month later, Burleson called Linguiti to complain that he had not received all of the real estate documents which he had given to Linguiti. However, Burleson made no mention about the receipt, or lack thereof, of the 1994 will. Linguiti located the documents which Burleson had requested and sent them to Burleson's home in mid-March 1995. Linguiti was in sporadic contact with Burleson after March 1995, but the will was never discussed again.

From July 1, 1994, when the will was signed, until the day of his accidental death on November 19, 1995, Burleson continued to tell others, though not appellant, that he was planning to leave at least part of his estate to the Smithsonian. Burleson also told his brother, Bruce Burleson I, that "he had things he wanted to go to the Smithsonian." On the day of his death, Burleson told his nephew, Bruce Burleson II, "that he was going to leave the Smithsonian something."

The day after Burleson's death, appellant went to Burleson's office and took home various documents and files, including a file containing originals of the 1992 and 1993 wills. On November 30, 1995, appellant filed a petition in Superior Court to probate the 1993 will. Bruce Burleson I, through his son, Bruce Burleson II, filed a complaint to contest the validity of the 1993 will on December 4, 1995.[3] The pro-

---

**2.** Some time after receiving the faxed copy of the will, Linguiti phoned Burleson to express some concerns he had with respect to certain of the will's provisions. In particular, Linguiti was concerned about the language in the will which indicated that the Smithsonian would serve as the estate administrator, which the Smithsonian was not in the business of doing. Burleson promised to take that provision out of the will; however, this was never done to anyone's knowledge. In addition, Burleson also communicated to Linguiti on several occasions his preference that in exchange for his making an *inter vivos*

bequest to the Smithsonian of various properties, the Smithsonian would pay him an income for the rest of his remaining days. Again, however, Linguiti reminded Burleson that the Smithsonian did not administer estates.

**3.** Bruce Burleson I, the decedent's closest surviving relative, stood to be the sole heir if Burleson died intestate. He alleged in his complaint that the 1993 will was improperly executed because his brother did not sign the will at the same time, nor in the presence of, any of the witnesses. *But see* D.C. Code

bate court appointed Edward T. Love to serve as Special Administrator on December 11, 1995. After Love located a copy of the 1994 will in William Burleson's home, he filed that copy with the Register of Wills on December 19, 1995.

On May 13, 1996, the United States, on behalf of the Smithsonian, filed suit to have the copy of the executed original 1994 will admitted to probate and to have all earlier wills declared revoked. At the close of discovery, the United States moved for summary judgment. The court granted the United States' motion for summary judgment against appellant on the ground that the 1993 will had been revoked by the proper execution of the 1994 will. Appellant filed a motion requesting the court to direct entry of summary judgment as a final judgment under Rule 54(b), which the trial court denied.

The United States and Bruce Burleson I immediately entered into a settlement agreement, and pursuant to a consent order between the two parties, the court entered a final judgment directing that the copy of the 1994 will be admitted to probate.[4] Appellant filed a timely notice of appeal.

## II.

■ Appellant argues *inter alia* that the trial court erred in granting summary judgment to the United States because there were genuine issues of material fact in dispute. Specifically, appellant asserts that left unresolved by the trial court was whether the 1994 will was revoked by the testator prior to his death. Relying on

case law in Maryland and Virginia, appellant contends that if the 1994 will had in fact been destroyed by William Burleson prior to his death, then the 1993 will naming her and her sons sole beneficiaries of Burleson's estate could not have been revoked because the revocation clause in the 1994 will would not have become effective until Burleson's death. In response, the United States suggests that appellant's appeal is moot because the 1994 will has already been admitted to probate and appellant failed to file a timely complaint challenging the validity of the will as required by D.C.Code § 20–305. *See* D.C.Code § 20–305 (except as otherwise provided, "any person may file a verified complaint to contest the validity of a will within 6 months following notice by publication of the appointment or reappointment of a personal representative"); *see also* D.C.Code § 20–331 (admission of a will to probate deemed final where no complaint filed within six months after the notice of appointment of the personal representative).[5] The United States also argues that, in any event, the trial court acted properly in granting summary judgment in its favor because the express revocation clause in the 1994 will became effective upon the execution of the 1994 will, rather than at the testator's death, and thereby revoked the 1993 will. Therefore, even if the 1994 will had been revoked by the testator, the 1993 will was already void and could not have been revived absent proper re-execution by the testator.

### A. Standard of Review.

■ We review the record *de novo* in determining whether summary judgment

§ 18–103 (requiring only that the will be signed by the testator and that at least two witnesses sign at the testator's presence).

4. The court, in accordance with the consent order, also directed Love to distribute to Bruce Burleson I, real property valued at $27,500 and cash in the amount of $130,000.

5. The United States raises this objection for the first time on appeal. We have ruled elsewhere that the six-month period provided for in § 20–305 is not a jurisdictional constraint,

but rather a statute of limitations. *See Easter Seal Soc'y for Disabled Children v. Berry,* 627 A.2d 482, 486 (D.C.1993). As the United States did not plead this affirmative defense in either its complaint or motion for summary judgment, it has waived the issue. *See Johnson v. Fairfax Village Condo. IV Unit Owners Ass'n,* 641 A.2d 495, 502 n. 10 (D.C.1994). Moreover, by petitioning the court in 1995 to probate the 1993 will, appellant had given notice that she considered that will to be valid.

was properly granted by the trial court and will affirm the grant "if there are no genuine issues of material fact in dispute and 'it is clear that the moving party is entitled to judgment as a matter of law.'" *Pipher v. Odell*, 672 A.2d 1092, 1094 (D.C. 1996) (quoting *Townsend v. Waldo*, 640 A.2d 185, 187 (D.C.1994)). Once the moving party has made an initial showing that there are no genuine issues of material fact in dispute, the opposing party has the burden of demonstrating that a genuine issue remains for trial. *See Townsend, supra,* 640 A.2d at 187. "'The requisite showing of a genuine issue for trial is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts.'" *Lee v. Jones,* 632 A.2d 113, 115 (D.C.1993) (quoting *Smith v. WMATA,* 631 A.2d 387, 390 (D.C.1993)).

## B. Analysis.

### 1. Standing

▮▮▮ At the outset, we reject appellant's contention that the United States lacked standing to challenge the probate of the 1993 will. Appellant argues that the Smithsonian was not an "interested person" as defined in D.C.Code § 20–101(d)(1), because it does not meet the criteria of any of the categories listed in that section.[6] Appellant's reading of the statute ignores the realities of a contested will situation. We hold that a person

named as beneficiary in a will is a "legatee in being" until it is finally determined that the will under which the beneficiary would have an interest in the estate will not be admitted to probate. *Cf. id.* (providing that an heir "ceases to be an interested person once a will has been admitted to probate" but is an "interested person for the purpose of any proceeding to contest the validity of the will and following any determination that the decent died intestate as to some or all of the estate"). The Smithsonian is quite clearly a "legatee in being", and hence an interested party, as it would have lost property which was bequeathed to it under the 1994 will had the 1993 will been admitted to probate and the decedent's estate distributed to appellant and her sons.[7]

### 2. Revocation of the 1994 Will.

▮▮▮ The record shows that the original 1994 will was never seen again after Linguiti returned it by courier, along with other real estate documents, to Burleson on February 9, 1995. Though there is evidence that appellant was the one who signed for the package, appellant stated in her deposition that she does not remember receiving, or signing for, any packages from the Smithsonian. However, when Burleson called Linguiti over one month later to complain that he had not received all of the real estate documents he had requested from the Smithsonian, Burleson did not indicate that he had not received the will. Noting these facts, appellant re-

---

6. D.C.Code § 20–101(d)(1) provides:

"Interested person" means (A) any person named in the will to serve as personal representative, until the appointment of a personal representative; (B) a personal representative; (C) any legatee in being, whether such legatee's interest is vested or contingent, until the legacy is paid in full; (D) an heir, except that an heir ceases to be an interested person once a will has been admitted to probate; provided, that, an heir is an interested person for the purpose of any proceeding to contest the validity of the will and following any determination that the decedent died intestate as to some or all of the estate; and (E) any creditor of the decedent, including those persons whose rights

accrue at the time of death, who has timely presented a claim in excess of $500 that has not been barred or discharged.

7. Appellant, in her brief, also challenged the trial court's denial of her motion for Rule 54(b) certification of the March 24, 1997 summary judgment decision as a final judgment for the purposes of noting an appeal to this court. *See, e.g., Peoples v. Warfield & Sanford, Inc.,* 660 A.2d 397 (D.C.1995). However, as the government and Bruce Burleson I have subsequently entered into a settlement agreement which allowed the trial court to enter a final judgment in this matter, the case is now properly before us, mooting appellant's argument.

lies on the rebuttable presumption in *Webb v. Lohnes*, 69 App.D.C. 318, 101 F.2d 242 (1938), that if a will, known to be in existence during the testator's lifetime, and in his custody, cannot be found at the testator's death, the testator must have destroyed the will with the intention of revoking it. *Id.* at 321, 101 F.2d at 245. The presumption is significant, according to appellant, because of the common law principle, set forth in cases from other jurisdictions, that a revocation clause in a subsequent will is effective only at the death of the testator, meaning that a prior will cannot be revoked if during the testator's lifetime, the testator destroys or cancels the subsequent will with the intent to revoke it. *See Timberlake v. State–Planters Bank of Commerce and Trusts*, 201 Va. 950, 115 S.E.2d 39, 44 (1960); *cf. Ottaviano v. Lorenzo*, 169 Md. 51, 179 A. 530, 535 (1935) ("A testamentary paper is in nature ambulatory until the death of its maker, and, so, is generally revocable at pleasure, and becomes operative only at its executant's death."). Therefore, appellant concludes, the revocation clause in the 1994 will never became operative and could not have revoked the prior 1993 will because by operation of the *Webb* presumption, Burleson must have destroyed the subsequent will prior to his death, with the intention of revoking it.[8]

■ Appellant's position, however, is not supported by the statutory language of D.C.Code § 18–109 (1997).[9] Specifically, to adopt appellant's construction of the law would render § 18–109(b) meaningless. Section § 18–109(b) provides that a will may be revived only by its re-execution. Clearly, a testator cannot revive a prior will after he has passed away, which is the inference we would have to draw if we were to accept appellant's interpretation of the law. Thus, we now hold that under D.C.Code § 18–109, a prior will may be revoked upon the *execution* of a subsequent will, and may not be revived unless the prior will has been re-executed or a codicil executed in accordance with other statutory provisions. *See also In re Smith's Estate*, 77 F.Supp. 217, 219 (D.D.C.1948) ("The second will having been duly executed necessarily revokes the earlier will .... The revocation of the second will does not reinstate the earlier will.").[10]

■ Therefore, even if we were to assume, from the fact that the original

---

**8.** No party has argued that the copy of the 1994 will found by the Special Administrator at Burleson's home and filed with the Register of Wills within a month of Burleson's death would be sufficient by itself to rebut the *Webb v. Lohnes* presumption, and we do not decide the issue. *Cf. Estate of McKeever*, 361 A.2d 166, 170–71 (D.C.1976) (holding that existence of carbon copy of will did not defeat presumption that testator intended to revoke will where will is traced into the possession and custody of the testator and is found destroyed in one of the methods set forth in D.C.Code § 18–109).

**9.** D.C.Code § 18–109 states, in pertinent part, as follows:

(a) A will or codicil, or a part thereof, may not be revoked, except by implication of law, otherwise than by (1) a later will, codicil, or other writing, executed as provided by section 18–103 ...; or (2) burning, tearing, cancelling, or obliterating the will or codicil, or the part thereof, with the intention of revoking it, by the testator himself,

or by a person in his presence and by his express direction and consent.

(b) A will or codicil, or a part thereof, after it is revoked, may not be revived otherwise than by its re-execution, or by a codicil executed as provided in the case of wills, and then only to the extent to which an intention to revive is shown.

**10.** Moreover, appellant's position is no longer the law even in Virginia or Maryland. In *Wilson v. Francis*, 208 Va. 83, 155 S.E.2d 49 (1967), the Supreme Court of Virginia noted:

[T]he fact that a will is ambulatory and speaks as of the maker's death does not preclude the General Assembly from enacting laws which revoke and declare a nullity an existing will upon the occurrence of a specified event .... After such a revocation, unless the will is revived in a manner prescribed by law, the will never speaks.

*Id.* at 51. The Virginia legislature has since repealed the statute which was at issue in *Timberlake*, and VA. CODE ANN., § 64.1–58.1 (Michie 1999) now states, in relevant part:

1994 will was not found at the time of his death, that Burleson intended to revoke his 1994 will, an issue which we need not decide,[11] this would not change the fact that the 1993 will was rendered void upon execution of the 1994 will containing a revocation clause. Appellant does not contest the trial court's determination that the 1994 will was validly executed.[12] Nor was any evidence presented suggesting that the deceased had revived the 1993 will by re-executing the will or executing a codicil.[13] Thus, as the undisputed facts establish that the 1993 will was void and inadmissible for probate, we concur with the trial court that there were no contested issues of material fact concerning Merritt's standing and that the United States is entitled to judgment as a matter of law against appellant.[14]

*Affirmed.*

---

If a testator executes a will or other writing in the manner in which a will is required to be executed, and such will or other writing expressly revokes a previous will, such previous will, including any codicil thereto, is thereby void and of no effect.

In Maryland, a prior will may be revoked by an express or implied clause in a subsequent will and may only be revived if the prior will is still in existence and republished with the same formalities as required for the execution of a will. *See* MD. CODE ANN., EST. & TRUSTS §§ 4–105, –106 (1998). Thus, with our holding in this case, Virginia, Maryland and the District now all have similar provisions dealing with this issue.

11. See note 9, *supra.*

12. We concur with the court's determination. In accordance with D.C.Code § 18–103, the 1994 will was in writing, signed by the testator, and the presence of two witnesses, Natalie Boehm and Idabel Wills, also signed the will in the presence of the testator. Moreover, it is irrelevant that the original 1994 will cannot presently be located, because as the trial court noted, "[s]o long as it was properly executed in accordance with § 18–103, it is not void."

13. Though the trial court also discussed whether the doctrine of dependent relative revocation might save the 1993 will, appellant does not raise this issue in her brief. This doctrine "comes into play where a later will revoking its predecessor is actually executed but is ineffective or inoperative because of some defect in execution." *Estate of McKeever, supra* note 8, 361 A.2d at 171. In such case the revocation fails, and the prior will remains in effect. As the trial court noted, however, the doctrine of dependent relative revocation does not apply when the subsequent will was ineffective or inoperative due to a reason other than a defect in the will's execution. *See In re Smith's Estate, supra,* 77 F.Supp. at 218. There were no such concerns as to the validity of the 1994 will in this case. See note 12, *supra.*

14. As the only other two parties in a position potentially to inherit from Burleson, Bruce Burleson I and the United States, have entered into a consent agreement, and neither appeals the trial court's entry of a consent judgment, that judgment is final.