## WEBB v. LOHNES.
### No. 7070.

United States Court of Appeals for the District of Columbia.

Argued Oct. 5, 1938.

Decided Nov. 28, 1938.

Petition for Reconsideration Denied Dec. 19, 1938.

Claude A. Thompson and Julius C. Martin, both of Washington, D. C., for appellant.

H. L. McCormick, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

GRONER, C. J.

Clara York Allen died in Washington City October 12, 1934. Her husband had predeceased her and, so far as is known, she had no kin of any degree. A search disclosed no will. In December 1934, Webb (appellant), on behalf of certain creditors, filed a petition for letters of administration. All creditors, as well as the District of Columbia, escheatee, consented to and requested his appointment, and in February 1935 an order was entered appointing him administrator. In January 1936 Lohnes (appellee) filed a petition to establish a lost will of decedent, alleging in substance that in July 1933 decedent had executed a will which had been properly witnessed and under the terms of which Mamie Hurst, of Fort Lauderdale, Florida, was sole beneficiary.

Appellant filed an answer, denying the making and execution of the will, asserting that decedent was mentally incapable of making a will, and alleging that if such a will was made, it had been destroyed and revoked by her of her own volition. The case came to trial in the court below and issues were framed and submitted to the jury in the usual form. At the close of the plaintiff's case and again at the close of all the evidence the defendant unsuccessfully moved for a directed verdict. The jury answered the issues as follows:

—decedent had made the will and had the mental capacity to do so; had not revoked it; and intended it to be and continue in effect as her will at the time of her death. The verdict of the jury was confirmed by the court, the will was ordered admitted to probate, and letters of administration c. t. a. were issued to appellee. This appeal followed.

Briefly, the evidence reveals the following: Decedent was the wife of Will J. Allen, a chief yeoman in the United States Coast Guard service. Allen was for a long time stationed in the office of Admiral Billard, Commandant of the Coast Guard, in Washington. After the death of the admiral, Allen was transferred to St. Petersburg, Florida, and was there with Mrs. Allen in the early part of 1933. In April of that year Allen was examined by a retiring board and either then or later in that year was ordered retired from the service. In May he and decedent were living in a rented house in Fort Lauderdale, Florida. There they met Mrs. Mamie Hurst, and for the next two or three months the relations between Mrs. Hurst and the Allens were very friendly. In July 1933 the Allens went to the office of G. H. Martin, a lawyer in Fort Lauderdale, and requested him to draw their wills, and a day or two later returned and signed the wills in the presence of two witnesses. Mrs. Allen took her will with her, and a week or two later on the eve of her departure to join her husband in Savannah she brought her trunk for safekeeping to Mrs. Hurst's home. At that time Mrs. Donohoe, a sister of Mrs. Hurst, was visiting the latter and was present when Mrs. Allen packed some clothes in the trunk, and Mrs. Allen then said to her "that she liked being with my sister and that my sister had cared for her and was working hard at the time and she said she had no relatives; that she had some money and she would like for her to have it". Mrs. Donohoe then had an opportunity to see the wills of both Mr. and Mrs. Allen. Mrs. Allen's will provided that upon her death her husband should inherit unless he predeceased her, and in that event her property should all go to Mrs. Hurst. Mrs. Donohoe testified that "after she read the two wills they were put back in the trunk"; that the trunk was locked and Mrs. Allen took the keys to the trunk with her; that after Mrs. Allen left, her sister (Mrs. Hurst) sent the trunk to Mrs. Allen in Savannah. On cross-examination the witness testified that she had seen only Mrs. Allen's will and not Mr. Allen's.

Mr. Allen went to Savannah two weeks ahead of Mrs. Allen, and during their sojourn there he was most of the time in the marine hospital and she in a boarding house. Mr. Allen returned to Fort Lauderdale sometime in the early fall of 1933 to obtain his retirement papers and remained about two weeks, much of the time in Mrs. Hurst's home. Mrs. Allen never returned. Mr. Allen died in Savannah on the 19th of May, 1934. During this nine months period Mrs. Allen and Mrs. Hurst corresponded, and five letters of Mrs. Allen were identified by Mrs. Hurst in her deposition received at the trial, and were admitted in evidence. The letters as they appear in the record are without significance so far as the will is concerned, and show no more than friendly relations between the two women. The last letter produced was dated May 7, 1934, and reads as follows:

"Savannah, Ga. May 7, 1934 My dear Mamie got your wire yesterday wass too up set to answer it Mr. Allen is in hospital and is very bad off I am fraid it is to lat he cannot walk on spet and his mind is also gorn same. and left arm also I am never crazy and not abbel to write to any one I have had trubbe ever since he came back here I guess he is about one his last legs now there is no help for him he is about gorn you can have everything but my trunk and fan and picture there are papers in my trunk so please tie my trunk up good and safe and send it to me sent it the express COD to 127 Abbercorn St. 127 Savannah Ga You better sent is as soon as you can for things lok bad for me I hade hopes of coming back to you but every thing fail god knows best so my prayers did not help I have fell away all most to nothing from worry and lost of sleep I remain Mrs. Clara Allen 127 Abercorn Street Savannah, Ga."

Several undated letters of Mrs. Hurst to Mrs. Allen appear in the same deposition, the most significant of which is the following:

"Tuesday noon Mrs Allen Just received your letter the reason I din't get your trunk off sooner as I have been buisy looking for my cow out in the everglades. She been gone 36 days and some one told me of seeing her so far I havent found her yet and when I did send the trunk the Express Company wouldn't take your Fan

and picture unless it was crated so I am sending it today in tin box & will be glad to send you rest of your things at once as I dont want to be responsible for them any longer since you feel the way you do. I have treated you as nice as you have treated me, so you by all means go to Washington with all the gossip you want to. Respectfully yours Mrs. Hurst."

Mrs. Allen's trunk was delivered to the express company by Mrs. Hurst May 12, 1934, consigned to Mrs. Allen at her Savannah street address. It is of interest to note that the last letter from Mrs. Hurst to Mrs. Allen, though undated, must have been written subsequent to the shipment of the trunk and is the last word in the correspondence between them. Whether the trunk was received by Mrs. Allen in Savannah prior to her leaving for Washington with her husband's body, does not appear. The trunk reached Washington and was received by Mrs. Allen the latter part of May, 1934, about a week after her arrival. On her return to Washington Mrs. Allen went to board with her friend, Mrs. Lloyd, at 3214 N Street, N. W. She took the trunk with her and occupied a room at that address for one month and after that returned "every day and took her meals". On June 21st she took a room at the home of Mrs. Burke at 1256 31st Street, N. W., and continued to reside there until the time of her death, which occurred October 12, 1934 In moving from Mrs. Lloyd's to Mrs. Burke's, Mrs. Allen moved her trunk to the home of her friend, Mrs. Hoover, where it was at the time of her death. When examined by the police, it was locked.

From what has been said already, it will be seen that from the time of the execution of the will to the time of Mrs. Allen's death only one witness claims to have seen it, and her testimony is that at the time of Mrs. Allen's departure from Fort Lauderdale it was deposited in her locked trunk. The only other evidence specifically relating to a will appears in the testimony of one William L. Chandler, a Coast Guardsman who returned, as an attendant, with Mr. Allen from Fort Lauderdale about the middle of September 1933. He testified that Mrs. Allen met Mr. Allen at the depot in Savannah, and that there was a conversation between them in relation to the money he had taken with him; that

Mr. Allen said he was without money and had been unable to pay Mrs. Hurst's bill for room and board in full; and that Mrs. Allen had replied: "Well, don't worry about that. We will have her taken care of in our wills, and as soon as you are retired we will go back there and live with her and square up our business affairs at that time". In the testimony of Mrs. Burke there is a statement to the effect that she asked Mrs. Allen at some time during the latter's sojourn at her house whom she should notify if anything happened to her, and that Mrs. Allen "said she had a friend that would come and take care of her, from the South", and "these people in the south would have charge of everything". Mrs. Allen identified the person referred to by saying that "this lady had some chinaware of hers, and other things, and she was going back to her".

Several of Mrs. Allen's friends in Washington testified that between Mr. Allen's death and her death they had often heard her say she had never made a will.

At Mrs. Allen's death the police took charge of her effects, and the only wills found were two executed by Mr. Allen in Washington, prior to his removal from that city to Florida.

At the trial Mr. Martin produced a rough draft of the will which he had written for submission to Mrs. Allen prior to the execution of the completed will. He testified that he had kept this rough draft in his files but was unable to find a carbon copy of the executed will, and that the rough draft was in effect a copy of the will executed by Mrs. Allen.

■ Sundry errors are assigned in relation to the admission in evidence of statements made by Mrs. Allen subsequent to the execution of the will; to the refusal of the court to charge as requested by appellant; and to the refusal of the court to direct a verdict at the close of all the evidence. In the view we take of the case it is unnecessary to notice particularly any but the last assignment mentioned. For even if we concede—without deciding—the admissibility of statements tending to show the continued friendly relationship of the women after the execution of the will and the statement, for whatever it may be worth, that Mrs. Allen intended to remember and provide in her will for Mrs. Hurst,[1]

[1] On the admissibility of the declarations of an alleged testator in probate cases, there has been sharp disagreement among the courts. Only where the issue involves the testator's mental condition and the declarations are relevant thereto

we are of opinion that, giving full force and effect to all of this character of evidence, it is not sufficient to rebut the legal presumption that the will was purposely revoked by Mrs. Allen in her lifetime. The rule on this subject is stated in 1 Page on Wills (2d Ed.), Sec. 773, as follows:

"If a will or codicil, known to have been in existence during testator's lifetime, and in his custody, or where he had ready access to it, can not be found at his death, a presumption arises that such will was destroyed by testator in his lifetime with the intention of revoking it; and in the absence of rebutting evidence this presumption is sufficient to justify a finding that the will was revoked."

The evidence on this subject to which we have already referred shows that the will was last seen about the middle of July 1933, some fifteen months before Mrs. Allen's death. After that time the only mention of any will in favor of Mrs. Hurst was in the conversation of Mr. and Mrs. Allen on his arrival in Savannah, reported in the testimony of William L. Chandler. Admittedly, the will was at the time of this conversation in Mrs. Allen's locked trunk in Mrs. Hurst's home in Fort Lauderdale, and except that the statement may be said to indicate the continued disposition of Mrs. Allen to provide for Mrs. Hurst, it adds nothing to the testimony of Mrs. Donohoe on the events just before the deposit of the will in the trunk. Admittedly also, the trunk continued in the possession of Mrs. Hurst from around the middle of July 1933, when Mrs. Allen left Fort Lauderdale, to the 12th of May, 1934, when it was forwarded by Mrs. Hurst to Mrs. Allen at Savannah. In the absence of anything to the contrary, it may be assumed that the will continued in existence during that period, for there is no reason to suppose that Mrs. Hurst looted the trunk and purloined it, and so far as appears Mrs. Allen had during that time no access to it. About the 25th or 26th of May, 1934, the trunk was received by Mrs. Allen in Washington, and though for a part of the time at Mrs. Hoover's house, it continued in her control up to the time of her death. During all of that time Mrs. Allen had access to the will and daily opportunity to destroy it. In these circumstances, the rule requires the proponent to show by a preponderance of the evidence that the lost will was not destroyed by the testatrix with the intention of revoking it. And yet during this whole period no witness claims to have seen the will or heard any statement from Mrs. Allen that it was still in existence. Nor does the evidence sustain appellee's claim of the improbability of revocation because of evidence of continuing interest and friendly relationship between the parties. The letters of Mrs. Allen introduced in evidence stopped May 7, 1934, and this is significant in view of the letter of Mrs. Hurst to Mrs. Allen subsequent to that date. This letter obviously was written in answer to one from Mrs. Allen which is not produced, and the contents of which have not been disclosed, but the language used and the general tenor of the letter definitely show a break in the former friendly relations between the two; and this interruption, so far as can be gathered from anything in the evidence, con-

has such evidence been generally admitted. See 3 Wigmore on Evidence, secs. 1738 et seq.; Thomas v. Young, 57 App. D.C. 282, 22 F.2d 588; and Throckmorton v. Holt, 180 U.S. 552, 572, 21 S. Ct. 474, 45 L.Ed. 663. Where the evidence of declarations is introduced for or against the validity of a will, the courts divide into three groups, supporting respectively the following theories: (1) The evidence should be excluded as hearsay. (2) It should be admitted under a special exception to the hearsay rule. (3) It should be admitted as an indication of the decedent's state of mind, which in turn is relevant to the issue. 3 Wigmore, sec. 1736. In Throckmorton v. Holt, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663, the Supreme Court used sweeping language to condemn the admission of any declaration in favor of or against a will. The influence of that decision has been great, and probably caused a change of view in some states, although Wigmore refers to the opinion as "a quicksand for those who seek guidance on this subject". Vol. III, p. 718, n. 2. In lost will cases three states have excluded such declarations: Mississippi, Montana, and New York. Twelve others have admitted them: Alabama, Illinois, Kansas, Kentucky, Missouri, New Hampshire, New Jersey, Oregon, Tennessee, Texas, Virginia, and Wisconsin. Id., sec. 1736, ns. 2, 3, and 4. On the specific point of rebutting the presumption of revocation, Kennedy's Will, 167 N.Y. 163, 60 N.E. 442, presents the view which excludes the evidence, and Jackson v. Hewlett, 114 Va. 573, 77 S.E. 518, the contrary view.

tinued to Mrs. Allen's death. No letter appears to have been written by either woman to the other from the time of Mr. Allen's death in Savannah to the death of Mrs. Allen in Washington five months later. The only subsequent friendly mention of Mrs. Hurst appears in the testimony of Mrs. Burke, mentioned above, that Mrs. Allen had designated a "lady from the South" .as the person who should be notified in case of calamity and who would have charge of everything at her death.

We think that, giving all possible force and effect to this statement, it would be going much too far to say that it is sufficient to rebut the legal presumption mentioned above. But if we should hold otherwise as to this, the date of the conversation is not sufficiently placed with relation to the time of Mrs. Allen's death to make it appear that Mrs. Allen's intention to leave her property to Mrs. Hurst continued to the latter date. And, even if we put out of the case the testimony of many other statements of Mrs. Allen that she had made no will, as well as her statements derogatory to Mrs. Hurst, we are left wholly without any evidence to rebut the legal presumption of destruction of the will by her. In Betts v. Jackson, 6 Wend., N.Y., 173, 181, 182, it is said by Chancellor Walworth:

"Legal presumptions are founded upon the experience and observation of distinguished jurists, as to what is usually found to be the fact resulting from any given circumstances, and the result being thus ascertained, whenever such circumstances occur, they are prima facie evidence of the fact presumed; and I have no doubt that five wills, made with all due formality, have been destroyed by the testators either in secret, or when no one was present to be a witness to prove the fact, to where there has been one destroyed or suppressed by fraud, or lost by time or accident, before the death of the testator."

In the case of Collyer v. Collyer, 110 N.Y. 481, 18 N.E. 110, 6 Am.St.Rep. 405, the presumption is said to stand in the place of positive proof. But whether the rule is based on presumption or burden of proof, the proponent must show by an amount of evidence which is of itself sufficient to satisfy the mind of a reasonable person that the will was not destroyed by the testator with the intention of revoking it. There is nothing in the record to indicate that the will, if it was in the trunk when Mrs. Allen left Florida, was not also in the trunk when she received it in Washington. Even if it was not in the trunk, she must have discovered its loss in ample time to replace it, because her statements show that she had examined the contents of the trunk on its arrival. If the will·was in the trunk, then she had ready access to it for the last *four months of her life*, and equally ready opportunity to destroy it.

What we have said indicates that in our opinion the necessary quantum of evidence was not offered by the proponent, and in this view it was the duty of the trial court to have granted the motion for a directed verdict.

Reversed and remanded to the United States District Court for a new trial.