TILGHMAN, COMMITTEE *v.* BOUNDS, EXECUTOR

[No. 52, September Term, 1957.]

*Decided November 19, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

Submitted on brief by *Stanley G. Robins, John B. Robins* and *Robins & Robins* for the appellant.

*John W. T. Webb,* with whom were *Webb & Travers* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Elizabeth Tilghman Smack died on January 19, 1957, and an unexecuted carbon copy of her will, executed in 1949, was offered for probate in the Orphans' Court for Wicomico County. After due notice to the next of kin and a hearing at which John B. Tilghman was represented by counsel, the court made certain findings of fact and passed an order admitting the copy to probate on April 16, 1957. A petition and *caveat* was thereafter filed by the appellant praying the court to rescind its order of probate, and to declare the decedent to have died intestate. The petition did not ask for issues to a court of law and waived the right to offer further testimony on the question. The court reconsidered the matter and on May 14, 1957, passed an order declining to rescind

the action taken and affirming its previous order. On the same day an appeal to this Court was taken from both orders. It is stipulated that Mary C. Tilghman, the mother of the decedent, would be her sole heir at law, in intestacy; that Mrs. Tilghman was adjudicated an incompetent on May 7, 1957, by the Circuit Court for Wicomico County; that her grandson, John B. Tilghman, was appointed her committee; that the committee was authorized by that court to oppose the probate; and that Mrs. Tilghman had been mentally incompetent since October 27, 1954.

The purported will evidenced by the copy bequeathed two thousand dollars to a friend, Ethelyn J. Maloney, and one thousand dollars each to two cousins, Ida Morris and May Morris, and bequeathed and devised the residue to the testatrix's husband, if living, but if not, to the Parsons' Home for the Aged. It is stipulated that her husband predeceased her. Carroll E. Bounds was named as executor. Mr. Bounds testified that he prepared the will for her and that she executed it in his office and in his presence on October 8, 1949, and took it away with her. He understood she kept it in a drawer in her bedroom. He searched for the will after her death in the presence of Mrs. Irma Tilghman, but could not find it. The will has never been produced for probate. The copy came from his files. Although he was her regular attorney he never prepared a later will. The secretary in his office testified she witnessed the will that Mrs. Smack executed, along with Doris Kelly.

Mrs. Lizzie G. Pope, a close friend of the decedent, testified that she was staying in the decedent's home just prior to her death and shared her bedroom. The decedent had been looking after some frozen pipes in the house next door, and came home about midnight. The decedent complained of shortness of breath, and evidently was suffering from a heart attack. Although Mrs. Irma Tilghman was asleep in a room across the hall, the witness did not call her, but telephoned a neighbor, Mrs. Wilkins, who in turn called a doctor. The decedent was taken to the hospital in an ambulance about two o'clock and died shortly thereafter. Mrs. Pope testified that before the doctor arrived the decedent asked her to get

her will out of a bureau drawer in another room, but she could not find it. The next morning, however, the will was found by John B. Tilghman, and handed to his mother, Mrs. Irma Tilghman, who showed her the will. She read the part in which the three cash bequests were made. It was dated in 1949, and had signatures at the end. She did not read the whole will, as it was folded halfway. Her son, Mr. Milton Pope, testified he saw the document at that time, but did not read it. It looked like a legal document. He testified over objection that Mr. John B. Tilghman said that it was the will of the decedent; that it contained no directions as to funeral arrangements; that Mr. Bounds was named as executor; and that there were cash bequests, but the balance of the estate had been left to the Parsons' Home for the Aged.

Mrs. Wilkins testified she came to the house in response to a call from Mrs. Pope, after arranging for a doctor. Mrs. Smack's regular doctor was out of town. Mrs. Wilkins heard the decedent ask Mrs. Pope to get her will, but Mrs. Pope could not find it, although she looked twice. The decedent asked her to look for her rings and keep them for her. She found the rings and subsequently turned them over to Mrs. Tilghman. She testified that before Mrs. Smack was taken to the hospital Mrs. Irma Tilghman came into the room and asked if she could do anything. The decedent gave her some directions about the pipes next door and said: "Turn the water off, and destroy it." The decedent was in great distress, and that was all she heard. She didn't hear what went before the words "destroy it".

The appellant contends that there was no evidence to justify the probate of the copy. He relies on the presumption that the original will was destroyed or revoked by Mrs. Smack, and also argues that there was no evidence, or no proper evidence, that the copy was identical with the original. It is conceded that she duly executed the original will in 1949. Of course, a will may be revoked "by burning, cancelling, tearing or obliterating the same, by the testator himself or in his presence, and by his direction and consent". Code (1951), Art. 93, sec. 348. The absence of the will raises a presumption that it has been destroyed by the testator, *animo*

*revocandi*, but the presumption is rebuttable. *Gilbert v. Gaybrick*, 195 Md. 297, 306; *Preston v. Preston*, 149 Md. 498, 520; 1 *Jarman, Wills* (8th ed.), p. 170; Note, 3 A. L. R. 2d 949. In the instant case, however, there was evidence tending to show that the will was in existence at and after the time of the death of the testatrix. Mrs. Pope testified that she saw what appeared to be a will dated 1949, containing some provisions identical to those in the copy. There is no evidence that she executed any later will, or that the document Mrs. Pope saw had been altered or mutilated in any way.

The testimony of Mrs. Wilkins might permit the inference that the decedent wished to have the will destroyed, but it is perfectly clear that it was not destroyed prior to her death. An unexecuted intention to revoke is not enough. The statute does not permit a formally executed will to be revoked by verbal declarations. *Woodstock College v. Hankey*, 129 Md. 675, 684; *Hunter v. Baker*, 154 Md. 307, 316; *Syfer v. Dolby*, 182 Md. 139, 150; *Sykes, Maryland Practice, Probate Law and Practice*, § 31. Moreover, the evidence not only tends to show that the will was extant at the time of the testatrix's death, but tends to show that it was last seen in the possession or custody of Mrs. Irma Tilghman, the widow of a deceased brother of the testatrix, and her son, John B. Tilghman, a nephew of the testatrix, who was subsequently appointed the committee of the next of kin. These persons stood to benefit, directly or indirectly, if the property of the decedent passed by intestacy. Yet, although they were both present in court, they offered no explanation as to what became of the will, or what they did with it. It is generally held that circumstances such as these shift the burden of proof. See Note, 3 A. L. R. 2d 949, 976; 2 *Page, Wills* (Lifetime ed.), § 873, p. 723. See also *Preston v. Preston, supra*, p. 512, and *Barranco v. Kostens*, 189 Md. 94, 98. It was held in the *Preston* case that under such circumstances it is unnecessary to prove the contents of the lost will in detail.

The appellant contends that the testimony of Milton Pope of statements made by John B. Tilghman as to the contents of the document he found on the morning after the decedent's

death, was hearsay, and therefore inadmissible. He argues that without this testimony the evidence was insufficient to support a finding that Mrs. Smack died testate. There is some authority for the proposition that one who hears a will read may testify to its contents, without violating the hearsay rule. *Goodale v. Murray,* 289 N. W. 450 (Ia.), and Note, 126 A. L. R. 1139. See also *Nelson v. Whitfield,* 82 N. C. 46. The statements here were only offered to identify the document as the 1949 will and to show its existence. The copy itself established the contents of the will she then executed. But if we assume without deciding that the testimony was inadmissible as against the incompetent, we think the error was not prejudicial. As we have indicated, the testimony of Mrs. Pope, which came in without objection, was sufficient to identify the document, and to establish that it had not been destroyed prior to the death of the testatrix. We think the Orphans' Court was not clearly wrong in its findings of fact, and the orders should be affirmed. Cf. *Shapiro v. Marcus,* 211 Md. 83, 89.

*Orders affirmed, costs to be paid out of the estate.*