989 A.2d 185 (2010)
In re ESTATE OF Anna CREECH
Bobbie Jean Ward-Allen, Appellant,
v.
Lettie R. Gaskins, et al., Appellees.
No. 08-PR-1246.
District of Columbia Court of Appeals.
Argued January 19, 2010.
Decided February 18, 2010.
*186 Carl E. Snead, for appellant.
Lettie R. Gaskins, pro se.
Before FISHER and OBERLY, Associate Judges, and FARRELL, Senior Judge.
FISHER, Associate Judge:
Sustaining objections to a codicil executed by Anna Creech in 1995, the Superior Court admitted her 1992 will to probate. We reverse and remand for further proceedings consistent with this opinion.

I. Facts
On August 13, 1992, Anna Creech executed a will ("1992 will") which contained eighteen items. Several of those items bequeathed various possessions to specific persons. For example, in Item VI, Ms. Creech left her china closet to her nephew, Cleveland Mitchell. In Item XIII, Ms. Creech bequeathed "the entire residue of my estate, whether real, personal or mixed, of every kind, nature and description whatsoever ... to all of my nieces and nephews who survive me." In addition, in Item XIV, Ms. Creech nominated Mr. Mitchell as her personal representative, and named one of her nieces, appellee Lettie Gaskins, as his alternate.
On August 11, 1995, Ms. Creech executed a codicil ("1995 codicil") to the 1992 will, explicitly revoking Items VI, XIII, and XIV. She now bequeathed her china closet to Special T. Allen instead of Mr. Mitchell; she devised her real property (her home at 131 U Street, N.E.), to Bettye Ward Garner and Bobbie Jean Ward-Allen as tenants in common; and, although she again nominated Mr. Mitchell as her personal representative, she named Ms. Ward-Allen as the alternate instead of Ms. Gaskins.[1] Ms. Creech ratified, confirmed, and republished her 1992 will "in all respects except as altered or modified by this First Codicil thereto."
Anna Creech died on December 15, 2001, at the age of 94. Nearly five years later, on November 7, 2006, Ms. Ward-Allen filed a petition for standard probate in which she sought appointment as Ms. Creech's personal representative. Ms. Ward-Allen attached the 1992 will and a copy of the 1995 codicil to her petition. In June 2008, two of Ms. Creech's nieces, Lettie Gaskins and Jessie Marie Davis, filed objections to admission of the 1995 codicil and to Ms. Ward-Allen's petition for standard probate. They based their objections on the fact that Ms. Ward-Allen filed a copy of the 1995 codicil, instead of the original, with the register of wills.
*187 After a hearing in August 2008, the trial judge sustained appellees' objections to probating a copy of the 1995 codicil because there was too "much uncertainty about what became of the original" and Ms. Ward-Allen did not meet her burden to "prove what happened to it." He then denied Ms. Ward-Allen's petition for standard probate and admitted the 1992 will to probate. The court also appointed Ms. Gaskins as personal representative, Mr. Mitchell having previously renounced the appointment. Ms. Ward-Allen filed a notice of appeal; Ms. Gaskins is the only appellee to have filed a brief in this court.

II. Analysis

A. Revocation and Revival
In the District of Columbia, a testator may revoke a will or codicil in two ways.[2] He may expressly revoke the instrument (or a part thereof) by executing "a later will, codicil, or other writing declaring the revocation." D.C.Code § 18-109(a)(1) (2001). Alternatively, revocation may be accomplished by "burning, tearing, cancelling, or obliterating the will or codicil, or the part thereof, with the intention of revoking it, by the testator himself, or by a person in his presence and by his express direction and consent." D.C.Code § 18-109(a)(2). Both of these forms of revocation are at issue in this case.
There is no dispute that in her 1995 codicil, Ms. Creech explicitly "revoke[d]" critical items from the 1992 will. "[I]n place of said Item[s]," she, among other changes, appointed a new alternate personal representative and disposed of her home differently. These revocations became effective upon execution of the 1995 codicil. D.C.Code § 18-109(a) (a will may be revoked in part); In re Burleson, 738 A.2d 1199, 1205 (D.C.1999) ("[W]e now hold that under D.C.Code § 18-109, a prior will may be revoked upon the execution of a subsequent will. ...") (emphasis in original).
Even if it were true, as the trial court seems to have concluded, that Ms. Creech revoked the 1995 codicil by destroying it (more on that later), the court erred by admitting the 1992 will to probate in its entirety. D.C.Code § 18-109(b) provides that: "A will or codicil, or a part thereof, after it is revoked, may not be revived otherwise than by its re-execution, or by a codicil executed as provided in the case of wills, and then only to the extent to which an intention to revive is shown." As we explained in Burleson, "under D.C.Code § 18-109, a prior will [once revoked]... may not be revived unless [it] has been re-executed or a codicil [is] executed in accordance with other statutory provisions." In re Burleson, 738 A.2d at 1205. In other words, revocation of the codicil would not reinstate Items VI, XIII, and XIV of the earlier will. Id. at 1205-06 ("[E]ven if we were to assume, from the fact that the original 1994 will was not found at the time of his death, that Burleson intended to revoke his 1994 will, ... this would not change the fact that the 1993 will was rendered void upon execution of the 1994 will containing a revocation clause."); In re Smith, 77 F.Supp. 217, 219 (D.D.C.1948) ("The revocation of the second will does not reinstate the earlier will.").
Here, as in Burleson, it is undisputed that the codicil had been properly executed, and no evidence was "presented suggesting that the deceased had revived the [earlier] will by re-executing [it] or executing *188 a[new] codicil." In re Burleson, 738 A.2d at 1206. Thus, Items VI, XIII, and XIV of Ms. Creech's 1992 will have not been revived and may not be admitted to probate.

B. The Missing Codicil
As we have mentioned, D.C.Code § 18-109(a)(2) allows a will or codicil to be revoked by "burning, tearing, cancelling, or obliterating ... with the intention of revoking it." The District of Columbia therefore recognizes an evidentiary presumption that applies if the original of a will or codicil cannot be found at the time of its maker's death:
"If a will or codicil, known to have been in existence during testator's lifetime, and in his custody, or where he had ready access to it, can not be found at his death, a presumption arises that such will was destroyed by testator in his lifetime with the intention of revoking it; and in the absence of rebutting evidence this presumption is sufficient to justify a finding that the will was revoked."
Webb v. Lohnes, 69 App. D.C. 318, 321, 101 F.2d 242, 245 (1938) (quoting 1 PAGE ON WILLS, § 773 (2d ed.1926)).[3] The presumption is not rebutted merely by producing a copy of the executed original. In re McKeever, 361 A.2d 166, 171 (D.C.1976) ("We hold that the decedent's revocation of the original will in her possession also revoked the carbon copy of the same will in her safe deposit box."). On the other hand, it is "generally agreed that the presumption [of revocation] is rebuttable[,]" Gilbert v. Gaybrick, 195 Md. 297, 306, 73 A.2d 482, 485 (1950);[4] it is not absolutely necessary that the original be produced or that its absence be satisfactorily explained.
Once the presumption of revocation is triggered, the party seeking to probate a copy of the will or codicil must show, by a preponderance of evidence, that the testator did not destroy the lost will or codicil with the intent of revoking it. Webb, 69 App. D.C. at 321, 101 F.2d at 245. A variety of evidence may be offered in an attempt to meet this burden. See In re Barfield, 736 A.2d 991, 998 (D.C.1999) (to prevail, proponent of will that could not be found at decedent's death must "offer[] facts to rebut the presumption of revocation"); Clark v. Turner, 87 U.S.App. D.C. 54, 55, 183 F.2d 141, 142 (1950) ("[Proponent of lost will] must show either that the will was in existence at the time of decedent's death or ... he must be able to show that the testatrix intended that the will remain in force, thus rebutting the presumption of revocation."); Webb, 69 App. D.C. at 322, 101 F.2d at 245 (considering that decedent had "access to the will and daily opportunity to destroy it," whether any "witness claim[ed] to have seen the will or heard any statement from [decedent] that it was still in existence," and whether "evidence [demonstrated] continuing interest and friendly relationship between the [decedent and beneficiary]."); New York State Library School Ass'n v. Atwater, 227 Md. 155, 158, 175 A.2d 592, 594 (1961) (considering testator's statements, within two years of her death, referring to the existence of the missing will, but "intimating that she might revoke or change [it]"); Plummer v. Waskey, 34 Md.App. 470, 481-84, 368 A.2d 478, 485-86 (1977) (citing 95 C.J.S. WILLS § 385, at *189 285-87) (listing types of evidence that can overcome the presumption) (considering the state of relations between the testator and beneficiary, as well as evidence that testator had been contemplating making a new will shortly before her death).
In this case, appellant Ward-Allen testified that she sent the original copy of the codicil to Mr. Mitchell, in North Carolina, because she knew that Ms. Creech had nominated him to be her personal representative and that he would need the document. When Ms. Ward-Allen ultimately filed a petition for standard probate, she had not recovered the original, and she filed a copy of the codicil.
Appellant contends she "testified that she had possession of the original of that codicil after Anna Creech died. ..." This may well have been what she intended to say, but the record is less than clear. The questions and answers did not always follow a logical progression, and Ms. Ward-Allen made confusing statements about whether she mailed the original before or after Ms. Creech died.[5] To add to the uncertainty, Ms. Ward-Allen's two witnesses, Ms. Garner and Special Allen, remembered seeing the original codicil "right before she sent [it to Mr. Mitchell]," but thought that occurred in 1995. Unfortunately, we do not know if, or when, Mr. Mitchell received the original codicil because he did not appear at the hearing, nor did Ms. Ward-Allen's attorney depose him. Moreover, although the court said, "I believe Ms. Ward-Allen's testimony about her sending it to Mr. Mitchell," it did not make any findings regarding when that occurred.
It is crucial that this uncertainty be resolved. If Ms. Ward-Allen had the original codicil after Ms. Creech's death, then Ms. Creech obviously had not destroyed it. See Tilghman v. Bounds, 214 Md. 533, 538, 136 A.2d 226, 228 (1957) (There was "evidence tending to show that the will was in existence at and after the time of the death of the testatrix ... [and none demonstrating] that she executed any later will, or that the [will, when last seen by witness,] had been altered or mutilated in any way."; allowing copy of will to be probated). If Ms. Ward-Allen sent the original to Mr. Mitchell before Ms. Creech's death, then Ms. Creech would have lost the opportunity to revoke the codicil by destroying the original. D.C.Code § 18-109(a)(2) (revocation of a will or codicil by destroying it may only be accomplished "by the testator himself, or by a person in his presence and by his express direction."). The presumption of revocation would not apply unless she somehow regained access to it.[6] These factual questions should be resolved on remand.
*190 As we have said, only portions of the 1992 will may be admitted to probate. If the court concludes on remand that Ms. Creech revoked the codicil, she will have made no valid provision disposing of the residue of her estate (including her real property and the china closet) and those items will pass under the laws governing intestacy. See 4 W. BOWE & D. PARKER, PAGE ON THE LAW OF WILLS § 30.14, at 140 (rev.3d ed. 2004) ("Where a devise is revoked by codicil and no disposition is made of it, it descends as intestate property."); see also Warner v. Warner, 99 U.S.App. D.C. 80, 86, 237 F.2d 561, 567 (1956) (remanding for consideration of whether portion of trust's residuum passed in intestacy); Howard v. Evans, 24 App. D.C. 127, 135 (1904) ("Bearing these rules in mind, we are of the opinion that the will did not pass the title to lot 8 in block 594. ... As to lot 8, Bolden Evans died intestate, and the title thereto passed to the plaintiff as his heir at law."). In remanding, we reiterate that "[t]he primary function of a court in construing the terms of a will is to determine the intent of the testator and to give that intention full effect unless it is contrary to law." O'Connell v. Riggs Nat'l Bank, 475 A.2d 405, 407 (D.C.1984); see also Washington Loan & Trust Co. v. Convention of Protestant Episcopal Church, 54 App.D.C. 14, 19-20, 293 F. 833, 838-39 (1923) ("If [the testator's] intention does not conflict with any rule of law or public policy, ... it is the court's duty to be diligent in seeing that it is obeyed. Nice distinctions by which the clearly stated will of a testator would be defeated should not be resorted to or encouraged.").

III. Conclusion
For the reasons we have explained, the 1992 will cannot be probated in its entirety. Further proceedings are necessary to determine whether Anna Creech revoked her 1995 codicil. If so, then much of her property will be treated as if she died intestate. If not, the codicil should be admitted to probate. We reverse and remand for further proceedings consistent with this opinion.
So ordered.
NOTES
[1] Ms. Garner is Ms. Creech's niece, Ms. Ward-Allen is Ms. Creech's grandniece, and Special Allen is Ms. Creech's great grandniece. All of them lived with Ms. Creech at her home and cared for her for twenty or twenty-five years.
[2] A will or codicil also may be revoked by implication of law, see generally In re Reap, 727 A.2d 326, 329 (D.C.1999); D.C.Code § 18-109(a), but no one suggests that occurred here.
[3] The presumption arises because a "testator is very likely not to destroy the will by a public act." 3 W. BOWE & D. PARKER, PAGE ON THE LAW OF WILLS § 27.5, at 440 (rev.3d ed.2004).
[4] "Since our law of wills is derived from Maryland law, we look to that jurisdiction for aid in construing our statutes." In re McKeever, 361 A.2d at 171 n. 9.
[5] For example, Ms. Ward-Allen responded to Judge Wertheim's question, "[w]hen did you have possession of it, before or after she passed?" by saying, "[w]ell, see. I knew where she kept it. I had it before she passed." After that comment, Ms. Ward-Allen explained that, as one of Ms. Creech's caretakers, she had access to all of Ms. Creech's important papers. Because of Ms. Creech's advanced age, "I had to take her almost every place she went[,] ... [and] I was also her right hand." Later in the discussion, Ms. Ward-Allen said, "when the late Anna Creech deceased, ... [a]t the time, I realized that Cleveland Mitchell, Jr. was the personal representative for the late Anna Creech. So, I, I realized that he had to have all the original documents in his hand. Therefore, ... I sent the [codicil] by mail. ..." There is no clear answer as to whether Ms. Ward-Allen mailed the original codicil before or after Ms. Creech passed away.
[6] See generally Tilghman, 214 Md. at 538, 136 A.2d at 228 ("It is generally held that circumstances such as these [where the will was last seen in the possession or custody of an interested party] shift the burden of proof."); In re Bians Estate, 162 Md. 208, 214, 159 A. 596, 599 (1932) (Revocation not presumed where "the evidence is that [after delivering the will to an uninterested party] Bians never requested nor obtained possession of the will, which remained unrevoked in the custody of [the uninterested party], who, through his neglect, has either lost or destroyed the original paper."); and John P. Ludington, Annotation, Sufficiency of Evidence That Will Was Not Accessible to Testator for Destruction, in Proceeding to Establish Lost Will, 86 A.L.R.3d 980 (1978).