*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-PR-0367

IN RE ESTATE OF NICHOLAS N. KITTRIE;
GEORGETTE SOBEL, APPELLANT.

Appeal from the Superior Court of the
District of Columbia
(2019-ADM-001384)

(Hon. Maurice A. Ross, Trial Judge)

(Submitted October 7, 2022                    Decided July 25, 2024)

*Jane Moretz Edmisten*, with whom *Cody J. Jones*, was on the brief for appellant.

*William A. Goldberg* was on the brief for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and BECKWITH and HOWARD, *Associate Judges*.

HOWARD, *Associate Judge*: Appellant Georgette Sobel challenges the trial court's order denying a petition for standard probate of a photocopy of a will executed by Dr. Nicholas Kittrie on October 30, 1998. Ms. Sobel, an interested party who had a romantic relationship with Dr. Kittrie, argues that the trial court erred in finding that she failed to rebut the presumption of revocation of the missing original will. Relying on our precedent in *In re Estate of Creech*, 989 A.2d 185, 188 (D.C.

2010), she alleges that the presumption is overcome because the record evidence demonstrates that Dr. Kittrie intended to continue supporting her and the trial court erroneously found her incredible. She further asserts that the trial court misapplied legal standards for her evidentiary burden and the revocation of a will. A review of the record demonstrates that Ms. Sobel in this case may very well have established that Dr. Kittrie was interested in supporting her; however, because that very evidence further strengthened the presumption of revocation—and discerning no additional error—we affirm.

## I.  Background[1]

Dr. Kittrie executed a will on October 30, 1998, in the office of Louis Fireison, an attorney and Dr. Kittrie's former colleague. Dr. Kittrie left Mr. Fireison's office with the original will and a copy of the will. Dr. Kittrie gave Ms. Sobel a sealed envelope with a copy of the will, which she gave to Mr. Fireison after Dr. Kittrie's

---

[1] Appellee, Norda Kittrie (Dr. Kittrie's daughter), requested that this court strike all "facts" that Ms. Sobel asserts without reference to the record. We deny this request and note that this court, as a general matter, does not consider evidence not found in the record. Nor do we discern any particular relevance to the "fact," not found by the trial court, that appellee is primarily concerned with.

death.  Most relevant to this case, Dr. Kittrie's 1998 will referenced six real estate holdings and left a two-bedroom condominium in Miami Beach, Florida, to Ms. Sobel.

Following the 1998 will, Dr. Kittrie made multiple additional known writings, at least two of which were considered by the trial court.  These two writings include edits to the 1998 will made on a copy of it in 2004 and a drafted will written in 2016.[2] All parties agree that neither writing is a valid codicil or will; instead appellee cites these as dispositive evidence that Dr. Kittrie did not intend the 1998 will to remain valid.  By the time of his death, Dr. Kittrie sold or gifted four of the six properties in the 1998 will, but the Miami condominium was still in his possession upon his death.

On December 4, 2019, Dr. Kittrie suffered a heart attack and was incapacitated until his death on December 9, 2019.  On December 26, 2019, Mr. Fireison filed a petition for standard probate of the photocopy of the 1998 will, as the original 1998 will could not be found.  Appellee Norda Kittrie, serving as the personal representative of the Estate of Sara Y. Kittrie (Dr. Kittrie's wife), and Appellee Zachary Kittrie (Dr. Kittrie's son), both opposed probate of the photocopied will.  A virtual bench trial was held before the Honorable Maurice A.

---

[2] These edits and drafts are referred to as "writings" throughout this opinion.

Ross on April 6, 2021 and April 15, 2021. Mr. Fireison, Ms. Sobel, and Norda Kittrie testified.

On May 14, 2021, in an oral ruling, Judge Ross denied Mr. Fireison's petition to probate the copy of the 1998 will. Judge Ross found that Mr. Fireison, as the proponent of the copy of the 1998 will, presented no facts to rebut the presumption of revocation that arises when an original will cannot be found, "other than that in the 21 years after the drafting of the 1998 will [Dr. Kittrie] never indicated to him [that Dr. Kittrie] changed his estate plan."[3] Judge Ross also considered evidence that Ms. Sobel presented in support of probating the copy of the will, which we discuss below, and found that she had not carried her burden to rebut the presumption of revocation. Judge Ross accordingly found that Dr. Kittrie died intestate and denied Mr. Fireison's petition. On May 21, 2021, Judge Ross also issued a written order denying the petition for standard probate and finding that Dr. Kittrie died intestate.

---

[3] During trial, Mr. Fireison testified that he spoke to Dr. Kittrie every one to six months but was unaware that Dr. Kittrie was meeting with other estate attorneys to create estate planning documents and had no idea who Dr. Kittrie talked to about his estate plans from 1998 until he died. Mr. Fireison also testified that the 1998 will was executed before Dr. Kittrie had any grandchildren and that he did not know whether Dr. Kittrie had grandchildren when he died.

Ms. Sobel appealed this order on May 27, 2021. In her brief, Ms. Sobel argues that Judge Ross erred in finding that she failed to rebut the presumption of revocation by a preponderance of the evidence. She asserts that her "uncontroverted testimony" regarding her four-decade relationship with Dr. Kittrie in tandem with Dr. Kittrie's writings and testamentary documents (in 2004 and 2016) following the 1998 will make it "more probable than not" that he did not revoke the 1998 will. Ms. Sobel also asserts that Judge Ross "expressed conflicting approaches to the evidentiary standard he was applying, and his oral decision leaves it entirely unclear whether he was applying the preponderance standard required." Finally, she argues that Judge Ross's credibility determinations are impossible to follow and that he displayed a "lackadaisical approach" to credibility determinations.

## II. Standard of Review

"In our review of a judgment following a bench trial[,] we[] 'may review both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to

support it.'"[4] *Reed*, 195 A.3d at 1204 (quoting D.C. Code § 17-305(a) (2012 Repl.)).

Under this standard of review, we view the evidence in the light most favorable to the prevailing party and defer to the trial court's credibility determinations unless they are clearly erroneous. *Id.* at 1204. The trial court's determination that the evidence presented is insufficient to rebut the presumption of revocation is a question of law, which we review de novo, that in turn depends on the trial court's interpretation of the presented evidence to which we defer. *See Safeway Stores, Inc. v. D.C. Dep't of Emp. Servs.*, 806 A.2d 1214, 1219 (D.C. 2002); *Vizion One, Inc. v. District of Columbia Dep't of Health Care Fin.*, 170 A.3d 781, 789 (D.C. 2017) (explaining that we review legal conclusions de novo).

### III.   Discussion

Ms. Sobel makes the following arguments: (1) under *Creech*, her relationship with Dr. Kittrie and Dr. Kittrie's additional writings evidencing the relationship rebut the presumption of revocation; (2) the trial court erred in determining her

---

[4] "The 'plainly wrong' standard means that if the trial court's determination is plausible in light of the record viewed in its entirety, we will not disturb it whether or not we might have viewed the evidence differently ourselves." *Reed v. Rowe,* 195 A.3d 1199, 1204 (D.C. 2018) (quoting *Hildreth Consulting Eng'rs, P.C. v. Larry E. Knight, Inc.*, 801 A.2d 967, 971-72 (D.C. 2002) (internal quotation marks omitted)).

credibility; and (3) the trial court applied incorrect legal standards. We are not persuaded and address these in turn.

## A.      Presumption of Revocation

We turn first to Ms. Sobel's central argument on appeal that her testimony regarding her four-decade relationship with Dr. Kittrie provides conclusive evidence of his continuing wish to benefit her at his death. She argues that this court's decision in *Creech* "placed heavy emphasis on evidence of a continuing close relationship between a testator and beneficiary as a way to rebut the presumption of revocation." 989 A.2d at 188. She argues that Judge Ross's failure to give the undisputed facts regarding their relationship proper weight was clear error.

In *Creech* we explained that "D.C. Code § 18-109(a)(2) allows a will or codicil to be revoked by 'burning, tearing, cancelling, or obliterating . . . with the intention of revoking it.'" 989 A.2d at 188 (quoting D.C. Code § 18-109(a)(2)). If a will known to have been in existence during the testator's lifetime, and in his custody, or where he had ready access to it, cannot be found at his death, "a presumption arises that such will was destroyed by testator in his lifetime with the intention of revoking it." *Id.* (quoting *Webb v. Lohnes*, 101 F.2d 242, 245 (1938)) (internal quotations omitted). "[I]n the absence of rebutting evidence[,] this presumption is sufficient to justify a finding that the will was revoked." *Id.* (quoting

*Webb*, 101 F.2d at 245) (internal quotations omitted). "The presumption is not rebutted merely by producing a copy of the executed original." *Id.* (quoting *In re McKeever,* 361 A.2d 166, 171 (D.C. 1976)).

We also explained that "[o]nce the presumption of revocation is triggered, the party seeking to probate a copy of the will or codicil must show, by a preponderance of evidence, that the testator did not destroy the lost will or codicil with the intent of revoking it." *Creech*, 989 A.2d at 188. While it is "not absolutely necessary that the original be produced or that its absence be satisfactorily explained[,]" the proponent of the lost will must be able to offer facts to rebut the presumption. *Id.*; *see also In re Estate of Barfield*, 736 A.2d 991, 998 (D.C. 1999). We noted that "[a] variety of evidence may be offered in an attempt to meet this burden." *Creech*, 989 A.2d at 188.

Contrary to Ms. Sobel's assertions, we did not place a "heavy emphasis" on the relationship between a decedent and a beneficiary as a way to rebut the presumption, but rather provided citations to several cases, including two where the state of this relationship was considered alongside other available evidence. *See id.*; *see, e.g.*, *Webb*, 101 F.2d at 245 (considering whether any witness claimed to have seen the will or heard any statement from decedent that it was still in existence,

whether the decedent maintained a friendly relationship with the beneficiary, and evidence that decedent had access to the will and opportunity to destroy it).

Our review of the record indicates that Judge Ross considered the nature of Ms. Sobel's relationship with Dr. Kittrie alongside other available evidence. In his oral ruling, Judge Ross noted that Ms. Sobel's principal argument in support of probating the copy of the 1998 will was that she and Dr. Kittrie were together and that he wanted to provide for her. However, Judge Ross explained that Dr. Kittrie "already provided some substantial amount for [Ms. Sobel] outside of probate and that is the house over two million dollars, over 1.3 million dollars in cash, plus what she obtained during the commissions alone that he paid her during his lifetime[.]" Ms. Sobel testified to receiving these financial benefits at trial and we understand Judge Ross's point to be that if Dr. Kittrie's intent was to continue benefiting Ms. Sobel after his death, this goal had been accomplished. Further, Judge Ross found that Ms. Sobel was not credible in her "explanation of her expenses" because it was "inconsistent just like her theory of the case." Thus, her argument that the 1998 will was essential to fulfilling Dr. Kittrie's goal is undercut. Judge Ross could consider the implications of her receipt of these benefits, alongside evidence of their close relationship, in concluding that Ms. Sobel had not met her burden.

However, evidence of this intent came not only from her testimony but also from documentary evidence, which may support the intent, but strengthened the presumption that Dr. Kittrie intended to revoke his 1998 will. Ms. Sobel argues that Dr. Kittrie's continued inclusion of her as a beneficiary in both a 2004 writing (Norda Kittrie Exhibit 9) and a 2016 writing (Sobel Exhibit 7), which she found after his death, reflect both his continuing intent to benefit her at his death and their continued close relationship, thus making it more probable than not that he did not revoke the 1998 will. Among other issues, this argument misunderstands *Creech* and turns the presumption of revocation on its head—asking the court to either presume or modify a will based on intent as opposed to an executed codicil.

In *Creech* we explicitly concluded that a later codicil, which was found to be properly executed, invalidated relevant elements of an earlier will. *Creech*, 989 A.2d at 187. Here, we have presumptive documented amendments to the 1998 will through the 2004 and 2016 writings, which the parties agree were not properly executed codicils. These writings, therefore, are evidence of an intent to revoke relevant portions of the will. *See Creech*, 989 A.2d at 187 (A testator "may expressly revoke [a will or codicil] (or a part thereof) by executing 'a later will, codicil, or other writing declaring the revocation'"). Ms. Sobel asks us to assume the converse, that in showing intent to modify the alleged 1998 will in unexecuted amendments we should presume the validity of the underlying absent will. We decline to do so.

Norda Kittrie Exhibit 9 is either an original or a copy of the 1998 will with extensive handwritten edits, which bears the notation "Revised July 20 '04" in the upper right-hand corner of the first page. The document bears Dr. Kittrie's signature and a July 20, 2004, notary seal. Sobel Exhibit 7 is a document entitled "LAST WILL AND TESTAMENT" and dated September 16, 2016. The document, which bears Dr. Kittrie's signature, contains changes to the disposition of his assets and includes references to his grandchildren, who were not yet born in 1998 and not referenced in the disputed 1998 will.

While Ms. Sobel correctly understands this court in *Creech* to allow evidence of the destruction of a will to establish revocation, it does not consider the intent to modify a will as evidence to show intent not to revoke. *See* 989 A.2d at 187 ("[A testator] may expressly revoke [a will or codicil] (or a part thereof) by executing 'a later will, codicil, or other writing declaring the revocation.' D.C. Code § 18-109(a)(1) (2001). Alternatively, revocation may be accomplished by 'burning, tearing, cancelling, or obliterating the will or codicil, or the part thereof, with the intention of revoking it, by the testator himself, or by a person in his presence and by his express direction and consent.' D.C. Code § 18-109(a)(2)."). Evidence of more recent writings can serve as revocation evidence of older wills. *Id.* Consequently, Ms. Sobel may very well be correct that Dr. Kittrie intended to support and provide for her, but the notarized 2004 writing purporting to amend the

1998 will (Norda Kittrie Exhibit 9) and the 2016 writing (Sobel Exhibit 7), which she found after his death, make it more probable that Dr. Kittrie did revoke his 1998 will, the original of which is missing. These writings show at least two instances where Dr. Kittrie intended to modify his will—and went so far as to presumptively have his signature confirmed by a notary, taking a strong affirmative step to legitimize the 2004 writing.

Our law regarding decedents' estates aims to give effect to decedents' certain intent and has such formal requirements to avoid speculation. *See Creech*, 989 A.2d at 190 ("[t]he primary function of a court in construing the terms of a will is to determine the intent of the testator and to give that intention full effect unless it is contrary to law.") As a result, similar to the preceding point that the unexecuted amendments support an intent to revoke, the writings also evidence changing intent over time. This begs the question of what other changes Dr. Kittrie may have made or intended to make—a question perfectly consistent with Ms. Sobel's argument that Dr. Kittrie was unorganized and kept papers strewn about multiple places and she fears some may be destroyed or missing—strengthening the presumption of revocation. Further, at best, the documents show some use of the 1998 will as a presumptive base document by Dr. Kittrie between 2004 and 2016, but do not demonstrate that between 2016 and 2019 Dr. Kittrie did not destroy the original will as is presumed by its absence. We discern no error in the trial court determining,

contrary to Ms. Sobel's position, that this evidence cuts against the validity of the alleged 1998 will.

The record shows that Judge Ross properly considered these documents in his review of the evidence and found that they did not support probating the copy of the original 1998 will. Judge Ross noted that "in 21 years much had changed in [Dr. Kittrie's] life, his real estate portfolios, his number of grandchildren" and that Dr. Kittrie "substantially revised" the alleged 1998 will in 2004 and "further revised the will in 2016." Focusing on the 2004 writing (Norda Kittrie Exhibit 9), the court found that this document "is strong evidence and consistent with the other evidence that the decedent revoked the 1998 will." We agree.

Additionally, the court noted that the fact that these and other testamentary documents were readily found and available did not support Ms. Sobel's testimony that the original 1998 will was misplaced or that someone had destroyed it. We defer to Judge Ross's interpretation of this evidence as well as his assessments of Ms. Sobel's various theories of what happened to the original 1998 will, which were unsupported by facts, and we do not address them in our analysis.

## B.    Credibility Determination

We now turn to Ms. Sobel's critiques of Judge Ross's finding that she was not credible. Ultimately, in arguing this, Ms. Sobel disputes how Judge Ross weighed

the evidence, which was determinative in the outcome of the case in her view. Had Judge Ross found Ms. Sobel credible, Ms. Sobel argues, the court may have found that the presumption of revocation, based on the fact that the 1998 will could not be found, was rebutted. Judge Ross found that much of Ms. Sobel's testimony during cross-examination "was unresponsive and self-serving" and noted that "after the decedent died . . . it is uncontroverted that [Ms. Sobel] spent large sums of money from one of his personal accounts." Judge Ross noted that she offered "conflicting explanations" for her spending, such as "she was in shock and . . . on auto pilot, but at the same time several times a week she was going to the Chevy Chase shopping district spending large sums of money from his account and then taking out large sums of cash from an ATM nearby." Judge Ross also questioned Ms. Sobel's explanations for several checks that were written after Dr. Kittrie's death drawing from his accounts. Judge Ross found that "she really wasn't credible" and that her explanation for her expenses was "inconsistent just like her theory of the case."

"[We cannot] substitute [our] judgment for that of the fact-finder when it comes to assessing the credibility of a witness. That determination is for the fact-finder to make and is made in large part, based on factors that can only be ascertained after observing the witness testify." *Robinson v. United States*, 928 A.2d 717, 727 (D.C. 2007); *see also Lee v. United States*, 668 A.2d 822, 833 n.26 (D.C. 1995) ("We

are in no position to second-guess, on the basis of a paper record, a credibility determination by a trier of fact who was in the courtroom . . . .").  Indeed, except under rare circumstances not alleged here, a judge's credibility determination is "virtually unreviewable."  *Jenkins v. United States*, 902 A.2d 79, 87 n.12 (D.C. 2006).

We find no clear error in Judge Ross's credibility determination as there is record evidence to support his assessment.  For example, Ms. Sobel admitted to purchasing over $1,000 worth of merchandise from a clothing and jewelry store using Dr. Kittrie's ATM card shortly after his death though this account was solely in Dr. Kittrie's name.

Even if Judge Ross did not find Ms. Sobel incredible, there is significant other evidence on which he could have reasonably found a revocation or revision, which Ms. Sobel does not dispute.  This includes the previously identified subsequent writings, handwritten alterations to the 1998 will and testamentary documents, and that no living person knows what Dr. Kittrie did with the original will—which created the presumption of revocation in the first instance.  *See Creech* 989 A.2d at 188 (quoting *Webb v. Lohnes*, 101 F.2d 242, 245 (1938)) (internal quotations omitted).  Ms. Sobel was not guaranteed a result solely based on her testimony being credited.

## C.      Trial Court's Application of Legal Standards

We now address Ms. Sobel's argument that Judge Ross failed to apply the correct legal standard, which she makes both with respect to his description of the evidentiary standard and to the legal standard for revocation of a will.  As to the evidentiary burden, Ms. Sobel contends that Judge Ross believed that the sponsored photocopy of the 1998 will needed to be proved by clear and convincing evidence as opposed to the proper preponderance of the evidence standard.  While the trial transcript is admittedly challenging to follow at times, in his oral ruling, Judge Ross discusses the applicable legal standard and states that "the preponderance of the evidence supports those in opposition," specifically referring to appellees, suggesting alignment with the standard in *Creech*.  989 A.2d 185.  Additionally, at trial, in a discussion between Judge Ross and Ms. Sobel's attorney regarding burdens of proof, Judge Ross indicates his awareness that the burden is a preponderance of the evidence.  Judge Ross asked Ms. Sobel's attorney, "[s]o, you would agree you have the burden, right?"  She responded, "I do understand that, and I understand that that burden is a preponderance of the evidence."  Judge Ross responded, "[r]ight. But my question is so what evidence do you have that supports you carrying the burden?"  In this exchange, Judge Ross does not challenge counsel's understanding of the legal standard but instead confirms it, and thus we find no merit to Ms. Sobel's argument on this point.

Further, Ms. Sobel additionally argues, essentially, that the trial court misunderstood the standard for revoking a will; she asserts that it improperly treated the 2004 and 2016 writings as revocation and ignored that neither indicate the physical act of revocation that she asserts must be done to the original will based on *Creech*. This argument again seeks to turn *Creech* on its head because it relies on a presumption that a missing original will is valid—ignoring that the presumption is the opposite. It is Ms. Sobel's legal burden in this case, at its foundation, to rebut the presumption of revocation that exists because Dr. Kittrie's 1998 will is indisputably missing, not because the subsequent writings are the act of revocation themselves. *Creech*, 989 A.2d at 189 ("If a will or codicil, known to have been in existence during testator's lifetime, and in his custody, or where he had ready access to it, cannot be found at his death, a presumption arises that such will was destroyed by testator in his lifetime with the intention of revoking it; and in the absence of rebutting evidence this presumption is sufficient to justify a finding that the will was revoked." (internal citations omitted)). We conclude that the trial court applied the correct legal standards.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's May 21, 2021, order.

*So ordered.*